Paul Randolph LINER, Plaintiff-Appel-
lant Cross Appellee,

v.

J. B. TALLEY AND COMPANY, INC.,
Defendant-Appellee Cross Appellant,

North River Insurance Company and
International Surplus Lines Insurance
Company, Defendants-Appellees.

No. 79–1998.
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 2, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Anthony M. Fazzio, Lafayette, La., for Paul Randolph Liner.

Allen, Gooch & Bourgeois, Arthur I. Robison, Lafayette, La., for all defendants-appellees.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

Appellant Paul Randolph Liner worked for appellee/cross-appellant J. B. Talley and Company, Inc. ("Talley") from June 29, 1975, to August 13, 1976, and again from December 20, 1976, to January 18, 1977. On January 3, 1978, Liner filed suit against Talley under the Jones Act, 46 U.S.C. § 688, alleging an injury on or about August 12, 1976, while employed by Talley, and claiming seaman's status. He also alleged a breach of defendant's warranty of seaworthiness and claimed entitlement to maintenance and cure. The injury may have occurred while Liner was ashore, welding a piece of discharge pipe from the dredge to which he was assigned. He alleged that the pipe rolled suddenly and knocked him down, causing a hernia.

In the course of the jury trial, the court disposed of the issue of Liner's status, concluding as a matter of law that he was a seaman under the Jones Act. The court also refused to submit the unseaworthiness claim to the jury. The jury returned a verdict for defendant Talley, finding in special interrogatories that Talley was not guilty of negligence toward Liner. The

question of maintenance and cure had previously been submitted to the court alone by stipulation, and, after the jury verdict, the court awarded Liner maintenance of $4,772 and cure of $1,590, concluding that Liner's hernia manifested itself on August 9, 1976, while he was employed by Talley. Talley's motion for new trial as to the award of maintenance and cure was denied. Liner appeals from the jury verdict, and Talley cross-appeals.

## I.

Liner first contends that the trial court committed reversible error in permitting Talley to introduce, under the business records exception, Liner's work record with another employer, Gulf Overseas. The defendant sought to have the record admitted through testimony of Mark East, an employee of Gulf Overseas' accounting department. However, East admitted on voir dire that he did not know who prepared the document and that it was not prepared under his supervision, nor could East testify that the record was prepared at or near the time Liner was hired. The court nevertheless admitted the document.

Under Fed.R.Evid. 803(6), the business record exception to the hearsay rule, the testimony of the custodian or other qualified witness who can explain the record-keeping procedure is essential. If the witness cannot vouch that the requirements of Fed.R.Evid. 803(6) have been met, the entry must be excluded. *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir. 1978). Nevertheless, the admission of documentary exhibits does not warrant reversal absent a showing that substantial rights of the party were affected. Fed.R.Civ.P. 61; Fed.R.Evid. 103(a); *Kingsley v. Baker/Beech-Nut Corp.*, 546 F.2d 1136, 1141 (5th Cir. 1977). The burden of demonstrating that such rights were affected rests with the party asserting error. *Coughlin, supra* at 307. Liner has not satisfied that

burden. He argues only that the evidence tended to show he was unaware of any injury at Talley until he applied for a job with Gulf Overseas. Evidence that Liner sought other employment but was rejected for hernia was already before the jury in the testimony of his former supervisor, Wilton Guillot. No other prejudice in admitting the document is shown.

## II.

Liner further contends that counsel for the defense deprived him of a fair trial by making statements in closing argument calculated to appeal to the passion and prejudice of the jury. Of these statements, the most serious involved repeated assertions by defense counsel that the appellant "lied" in numerous parts of his testimony and that if the jury gave appellant the award requested, "he's going to walk out of here laughing . . . [and] he's going to be laughing at you." Counsel for appellant made no objection to these statements at the time.

Case law in this circuit indicates that "we always possess the power to consider errors to which no objection was made." *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975). However, we wish at this time to point out that the Federal Rules of Civil Procedure differ fundamentally from our criminal rules. In the latter, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). *No such civil rule exists.* Nevertheless, a judge-made "plain error" doctrine has been read into the civil rules by this circuit and others, particularly with regard to jury instructions. 9 Wright & Miller, *Federal Practice & Procedure* § 2558 at p. 674 (1971); 11 *ed.* § 2883 at p. 280. We stress again [1] our agreement with the noted scholars just cited: "If there is to be a plain error exception to [Fed.R.Civ.P.] 51 at all, it should be confined to the exceptional case where the error has seriously

---

1. For an example of our earlier pronouncements on this subject, *see Delancey v. Motichek Towing Serv., Inc.*, 427 F.2d 897, 901 (5th Cir. 1970) ("Although it is true that in any case an appellate court will notice error so fundamental as to result in a miscarriage of justice, that power will only be exercised in exceptional cases.").

affected the fairness, integrity, or public reputation of judicial proceedings." 9 *id.* at 675.

We have not limited our plain error doctrine to cases involving erroneous jury instructions but have allowed it to operate in the context of closing arguments to which no objection was made.[2] *See Edwards v. Sears, Roebuck & Co.*, supra ; *Hyman v. Insurance Company of North America*, 481 F.2d 441, 444 (5th Cir. 1973). Yet *Edwards* also emphasizes "our continued reluctance to address for the first time on review errors which the trial court was not given an opportunity to consider and correct . . [especially] when the errors assertedly lie in counsel's closing remarks." 512 F.2d at 286. While it is true that this court in *Edwards* did reverse on the basis of prejudicial, inflammatory remarks made by counsel in closing argument, the *Edwards* court had the benefit of a prior finding by the trial judge who, in requiring remittitur, determined that the jury verdict had been improperly influenced by passion and prejudice. *Id.* at 281–82. Thus, in a sense the *Edwards* court upheld the trial judge's findings on prejudice as not clearly erroneous, although we found that such prejudice mandated a new trial, not merely a remittitur. The trial judge in the instant case made no such finding of prejudice, nor was he requested to do so. Additionally, the trial court cautioned the jury both before and after the closing arguments that statements of counsel in closing argument were not evidence. In light of our extreme reluctance to grant relief in the absence of an objection, this closing argument, while perhaps dubious, simply does not provide us with a proper occasion for the application of the judicially contrived plain error doctrine.

### III.

 Liner claims error in the trial court's refusal to give his requested instruction on unseaworthiness. A vessel, together with her appurtenances, must be reasonably fit for her intended use, and the shipowner's duty to furnish a seaworthy vessel is a type of liability without fault, to be considered separately from his Jones Act duty of reasonable care. *Hussein v. Isthmian Lines, Inc.*, 405 F.2d 946 (5th Cir. 1968). Liner contends primarily that the elbow pipe that he was welding while ashore was an integral part of the dredge's discharge system that had been used and was to be used in the ship's operation, once it was reinstalled, and therefore constituted an appurtenance of the ship. Liner was constructing the elbow pipe on the bank from shoreline pipe used in previous dredging operations; evidently the pipe had been taken ashore to clear the vessel so that the deck could be painted. We will assume arguendo that such a pipe is an appurtenance[3] of the dredge and, if unseaworthy, could give rise to liability, even for shoreside accidents. *Cf. Gutierrez v. Waterman Steamship Co.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) (beans spilling on dock from bags offloaded from ship's hold served as basis for unseaworthiness liability). Nevertheless, Liner failed to present evidence that the pipe was unseaworthy. The evidence at trial merely went to his contention that the pipe was blocked improperly and that the pipe rested on uneven ground, and there was no proof showing who was responsible for the location of the pipe. Conditions on land for which the shipowner is not responsible cannot be made the basis for a claim of unseaworthiness. Additionally, under the facts of this case, the jury finding of no negligence renders harmless any error in failing to charge the jury on unseaworthiness based on a claim that the pipe was improperly blocked by the shipowner. Since a requested

2. Evaluating remarks similar to those made here, another circuit held that counsel who called a principal witness "a liar, . . . a cheat, and . . . perjurer" came "perilously close" to violating the rule against giving a personal opinion of the credibility of a witness but concluded that under the circumstances the remarks were not so prejudicial as to warrant reversal. *Compagnie Nationale Air France v. Port of New York Authority*, 427 F.2d 951, 956 (2d Cir. 1970).

3. It appears that the trial court believed that the pipe was not an appurtenance of the vessel.

charge need not be given unless supported by the evidence, we uphold the trial court.[4]

## IV.

■ Appellant next complains about a variety of trial court rulings on the examination or cross-examination of witnesses. Specifically, he claims that the court erred in limiting cross-examination of Raymond Smith and William E. Faciane, two witnesses called on behalf of defendant Talley. The district court possesses wide discretion in limiting the scope of cross-examination of witnesses. Furthermore, it was Liner's counsel's obligation to present this matter to the trial court by means of an offer of proof and to obtain specific rulings on this claim of error. *See Mills v. Levy*, 537 F.2d 1331 (5th Cir. 1976). This appellant's counsel failed to do. It appears only that Liner desired to impeach for bias or interest by establishing Smith's salary with Talley and by evidence of an unrelated accident at Faciane's workyard. Neither exclusion carried sufficient prejudice to mandate reversal. *See Securities Investment Co. v. Indian Waters Development Corp.*, 501 F.2d 662, 667 (5th Cir. 1976).

■ Similar problems exist with appellant's claim that the trial court erred in refusing to allow him to call Daniel Habetz, his former employer, as a witness and his claim that the court erred in refusing to allow Liner to corroborate his testimony regarding medical information given to his doctors. The trial court possesses equally broad discretion in excluding even relevant testimony if it is cumulative or repetitious. As to Habetz, the court simply adjudged that appellant's prior employment could best be brought out by appellant's own testimony. Moreover, since appellant made no offer of proof as to Habetz' excluded testimony, error may not be predicated on its exclusion. The same rule applies concerning appellant's attempted medical corroboration. *See Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681, 682–83 (5th Cir. 1979).

■ Liner also urges error in permitting the defendant to impeach appellant over his objection by reading from Liner's deposition without first giving him an opportunity to admit or deny the alleged inconsistent statements. An examination of the questioned passages reveals no substantial misuse of the deposition; rather, defense counsel employed it as an effective counter to appellant, who constantly reiterated his inability to remember details of the relevant transactions. We find no error. *See* Fed. R.Civ.P. 32(a)(2); *Coughlin, supra* at 308.

## V.

■ Liner contends that the jury's finding of no negligence was "clearly and manifestly erroneous" in view of the law and the evidence. His counsel failed to move for a directed verdict either at the close of his case or after the presentation of Talley's evidence and failed to move for judgment n.o.v. or new trial following the jury's answer. Federal appellate courts do not directly review jury verdicts, *Coughlin, supra* at 297, and will not consider whether there is support in the evidence for a jury's verdict unless the question has been first submitted to the trial court by way of motion for directed verdict. *Id.; Quinn v. Southwest Wood Products*, 597 F.2d 1018, 1024 (5th Cir. 1979). Therefore, this court cannot consider Liner's contention.

## VI.

In its cross-appeal, Talley claims that the trial court's finding on the issue of maintenance and cure (submitted to the judge on stipulation by the parties) is contrary to both the law and the evidence. The court concluded that Liner's condition "manifested itself on August 9, 1976, while Mr. Liner was employed by J. B. Talley & Co." and held that since Liner had not reached maximum cure, Talley was liable for his maintenance and cure. Talley concedes that the

---

4. Appellant also bases an unseaworthiness argument on the contention that he was sent alone to do the welding work when the job required more than one person. No substantial evidence was presented at trial on this point.

evidence supports a finding that Liner's hernia manifested itself while he was its employee, but it argues that since Liner was a day worker who neither slept nor ate on the vessel or at the work site, further evidence was required to show some causal connection to his employment.

 Talley does not question the court's finding of seaman status. Ordinarily, a seaman who seeks maintenance and cure need prove only that the injury or illness arose during his employment; no causal connection to his duties need be shown. *Calmar S. S. Corp. v. Taylor*, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Gilmore & Black, *The Law of Admiralty* 288 (2d ed. 1975). Additionally, his entitlement to maintenance and cure is "entirely unrelated to any fault or negligence on the part of the shipowner," since such payments "are predicated on the employment relationship itself . . . and are held forfeit only under certain well-defined and narrowly limited circumstances." *Oswalt v. Williamson Towing Co.*, 488 F.2d 51, 53 (5th Cir. 1974). A blue water seaman, moreover, may recover for an injury suffered during shore leave while on personal business. *See, e. g., Aguilar v. Standard Oil Co.*, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). However, a seaman in Liner's position, who lives ashore, must prove that a shoreside injury was incurred while in the service of the ship. *See Baker v. Ocean Systems, Inc.*, 454 F.2d 379 (5th Cir. 1972), and cases discussed therein.

 Talley's argument concerning a requirement of causal nexus is therefore understandable only as a challenge to the basic, implicit finding that Liner's injury occurred while in the service of the ship. There is ample evidence in the record on which the court could base such a finding, and we find no error in the court's award of maintenance and cure. We are mindful of the rule that ambiguities or doubts in the application of the law of maintenance and cure "are resolved in favor of the seaman." *Oswalt, supra* at 54.

AFFIRMED.