Louie E. WILKERSON

v.

TELEDYNE MOVIBLE OFFSHORE,
INC.

Civ. A. No. B–78–505–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

Sept. 19, 1980.

Joe Bob Golden, Don G. Adams, Adams & Golden, Jasper, Tex., Bill A. Martin, Newton, Tex., for plaintiff.

Robert M. Julian, William H. Seele, Houston, Tex., for defendant.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

The Plaintiff, Louie Edward Wilkerson, brought this suit under the Jones Act, 46 U.S.C. § 688, and the general maritime law to recover damages for injuries he sustained while employed by the Defendant, Teledyne Movible Offshore, Inc. (Teledyne).[2] Jurisdiction is based on 28 U.S.C. §§ 1331(a) and 1333(1). Venue is proper in this Court, as the Defendant is doing business within this District and Division. 28 U.S.C. § 1391(c). Trial was held before the Court on May 9, 1980.

Teledyne is engaged in the business of conducting offshore oil drilling operations in the Gulf of Mexico. The Plaintiff began employment with Teledyne in October of 1976, in Galveston, Texas. At all times material to this case, the Plaintiff was an employee of Teledyne.

The Plaintiff's first assignment with Teledyne was as a power plant operator aboard

---

1. This memorandum opinion constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. *See Carolan v. Central Freight Lines, Inc.*, 489 F.Supp. 941, 942 n. 1 (E.D.Tex.1980).

2. The Plaintiff's claims against Mobil Oil Corporation were dismissed with prejudice at the close of the Plaintiff's case, as no evidence of liability had been shown against that defendant.

Teledyne's Rig 17. Briefly, Rig 17 is a submersible drilling platform which is designed to be towed into position, where a hydraulic jacking procedure lowers three pads to the floor of the ocean and raises the drilling platform to approximately sixty feet above the surface. Drilling operations would then take place. When ready to be moved to another location, the same jacking procedure lowers the drilling platform and raises the legs. The rig is then towed by tug to the next well location. Rig 17 has a raked bow, anchors, navigation lights, a galley and crew quarters, life rafts, and other life–saving devices. While Rig 17 was being prepared for movement or actually under tow, the Plaintiff's duties consisted of shutting down the rig except for the power plant, closing off the bulkheads, tying down and balancing the load, emptying the bilges, checking the navigation lights, and making certain that the rig was otherwise ship-shape for towing.

The Plaintiff sailed from Galveston on Rig 17 into the Gulf of Mexico, working aboard her as a power plant operator until April of 1977. He was then to be transferred to Teledyne's Rig 16, which is a submersible drilling platform with characteristics identical to those of Rig 17. Prior to such transfer, the Plaintiff was temporarily assigned to Rig 10, which is a drilling platform permanently affixed to the floor of the ocean, until a power plant operator position became available aboard Rig 16. After one week on Rig 10, he sustained a hernia, which required him to be taken ashore for an operation.

After his recovery, the Plaintiff reported for duty and was assigned to fill–in as power plant operator on Rig 4, a fixed drilling platform, the regular operator having been forced to leave due to an emergency. His duties on Rig 4 were understood by all parties to be temporary, and the Plaintiff was to be transferred to Rig 16 as soon as feasible.

The Plaintiff arrived on Rig 4 at 8:00 a. m. on July 26, 1977. The injuries now complained of were sustained one hour later. The Plaintiff was instructed to check the fuel tank, as Rig 4 was being prepared to take on fuel. Being unfamiliar with the lay–out of this particular rig, the Plaintiff asked where the fuel tank was located. He was told that it was outside the back door of the engine room on the right. The Plaintiff pulled the door open and stepped out, looking to his right for the fuel tank. Unknown to him, a flight of stairs began immediately outside the back door of the engine room, leading to the deck below. The Plaintiff did not look down, but was looking for the fuel tank. The top two steps of the stairs had coarse–bristle mats placed upon them. The mats were not fixed to the metal steps and were covered with drilling mud. The Plaintiff slipped on the first mud–covered mat and fell to the bottom of the stairs, a distance of about ten feet, severely injuring his back.

After finishing his shift, the Plaintiff noticed that there was blood in his urine and reported that fact to his supervisor. He was taken to a hospital in Galveston and remained there for about two days, when he was sent home to Newton County to see his personal physician, Dr. Gribble.

A preponderance of the credible medical evidence testimony admitted at trial indicates that the Plaintiff sustained serious injuries to his back as a result of his fall. These injuries caused, and still cause, extreme pain. The Plaintiff suffers from severe, continuing muscle spasms in the lower dorsal area, with secondary dextroscoliosis. The Plaintiff was also found to have a lateral compression at T–12 of the thoracic spine, and possibly at T–9. Hypertrophic spurring was found, in addition to early osteoarthritis in the mid–thoracic area. He had a great deal of difficulty turning over in bed. Since his release from the hospital, Dr. Gribble has treated him with antispasmodics and musculo–skeletal relaxants, periodic steroid injections, injections for pain, and pain medications. Dr. Gribble tried physical therapy on several occasions, but it was too painful for the Plaintiff to endure.

Dr. Gribble's primary treatment has been medication and education of the Plaintiff as to muscular movements and exercises.

Also, the Plaintiff has been provided with a nerve stimulator which affords him considerable relief from pain. The nerve stimulator is a device that is worn on the body, which interferes by means of a low frequency electrical current with the pain signal sent from the affected area to the brain. The Plaintiff sleeps in a full Taylor brace, which maintains a limited range of movement over the entire spine.

Dr. Gribble is of the opinion, and the Court finds, that the Plaintiff will have to endure pain for the rest of his life, and must learn how to deal with it. In this connection, Dr. Gribble has recommended that the Plaintiff be admitted to the Institute for Research and Rehabilitation at the Texas Medical Center in Houston, Texas (the Pain Clinic), which has a specialized program for helping patients such as the Plaintiff to control and live with intractible pain. The Plaintiff is unable to work, even around the home, due to his injuries and accompanying pain, and, in all reasonable medical probability, will never be able to do so.

The parties have stipulated that one thousand, eight hundred forty–seven dollars and eighty–one cents ($1,847.81) is the amount of reasonable and necessary medical expenses incurred by the Plaintiff as a result of his injuries up to the date of trial, which were not already paid by Teledyne. The Court finds that the Plaintiff will incur reasonable and necessary medical expenses in the future in the amount of seventeen thousand, eight hundred twenty–one dollars ($17,821.00)[3] as a result of his injuries. The amount of lost earnings in the past and loss of earning capacity is found to be two hundred thirty–nine thousand, seven hundred forty dollars ($239,740.00).[4] The Court also finds that two hundred thousand dollars ($200,000.00) is reasonable compensation to the Plaintiff for the extreme physical pain

and mental suffering he has endured in the past and is likely to endure in the future as a result of his injuries.

The parties have stipulated that the Plaintiff was paid Longshoremen and Harbor Workers' Compensation benefits at the rate of two hundred twenty–six dollars and twenty–seven cents ($226.27) per week for a period of fifty–four (54) weeks, amounting to twelve thousand, two hundred eighteen dollars and fifty–eight cents ($12,218.58). The parties also stipulate that Teledyne and its compensation carrier are entitled to reimbursement of this sum.

I

Only seamen are entitled to the liberal provisions of the Jones Act.[5] *Stokes v. B. T. Oilfield Services, Inc.,* 617 F.2d 1205, 1206 (5th Cir. 1980); *Wixom v. Boland Marine & Manufacturing Co., Inc.,* 614 F.2d 956, 957 (5th Cir. 1980); *Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 452 (5th Cir. 1980); *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1345 (5th Cir. 1980). The Fifth Circuit has defined "seaman" as one who

(1) [has] a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*Guidry,* 614 F.2d at 452; *Billings v. Chevron, U. S. A., Inc.,* 618 F.2d 1108, 1109 (5th Cir. 1980); *Wixom,* 614 F.2d at 957; *Beard v. Shell Oil Co.,* 606 F.2d 515, 517 (5th Cir. 1979); *Barrios v. Louisiana Construction Materials Co.,* 465 F.2d 1157, 1161 (5th Cir. 1972); *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir. 1959).

---

3.  Discounted to present value.

4.  Discounted to present value.

5.  Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at

law, with the right of trial by jury, and in such actions all statutes of the United States modifying or extending the common–law right or remedy in cases of personal injury to railway employees shall apply . . . . .
46 U.S.C. § 688 (emphasis supplied).

The *Robison* court held that the term "vessel" includes "special purpose structures not usually employed as a means of transport by water but designed to float on water." 266 F.2d at 779. Although it would probably seem strange to the uninitiated, it is settled law in this circuit that movable drilling platforms[6] are vessels for purposes of the Jones Act and maritime law, while permanently fixed platforms[7] are not. *Longmire*, 610 F.2d at 1348. *See* 2 M. Norris, *The Law of Seamen*, § 669 at 306–07 (3d ed. 1970 & Supp.1979). The latter are considered artificial islands. *Id.* The remedy for those who work and are injured on fixed platforms is solely under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 905(a), and the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b).[8]

The Fifth Circuit has held in a long line of cases beginning with *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959), that workers aboard movable drilling rigs are seamen for purposes of the Jones Act and general maritime law. *See, e. g., Longmire*, 610 F.2d at 1348; *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422, 432 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); *Vincent v. Harvey Well Service*, 441 F.2d 146, 150 (5th Cir. 1971); *Boatel, Inc. v. Delamore*, 379 F.2d 850, 858–59 (5th Cir. 1967); *Producers Drilling Co. v. Gray*, 361 F.2d 432, 437 (5th Cir. 1966); G. Gilmore & C. Black, *The Law of Admiralty*, §§ 6–7, 6–21 (2d ed. 1975); 2 M. Norris, *The Law of Seamen*, § 669 at 306–07 (3d ed. 1970 & Supp.1979). The Court finds that the Plaintiff, by virtue of his work aboard Rig 17, which certainly contributed to the function of the vessel, *see Higginbotham*, 545 F.2d at 433 n. 13, acquired the status of a seaman.

The Fifth Circuit has recently written that the Jones Act

> says nothing about the place where the injury occurs. Therefore, once it is established that a worker is a seaman, the Jones Act permits him to recover from his employer even for injuries received while he is on shore. Neither does the statute require that his tasks at the time he is injured be related to service of the ship. Thus, just as the place of injury is not decisive, the situs of the employee's work is not determinative in a Jones Act case, and a seaman does not lose his status when he is temporarily assigned by his employer to duties off the vessel.

*Guidry*, 614 F.2d at 453 (citations omitted). The question of whether a seaman has lost his status by virtue of off–vessel work is a fact question. *Id.* Factors to be considered are: (1) the duration of the assignment; (2) its relationship to the employer's business; (3) whether the employee was free to accept or reject the temporary assignment; and (4) any other factor relevant to the inquiry. *Id.*

This case resembles very closely the case of *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).[9] In that case, the Fifth Circuit held that a seaman who worked the majority of his time on movable drilling platforms, yet who was temporarily assigned to a fixed platform, did not lose his seaman status by virtue of such temporary assignment, reversing a district court finding to the contrary. *Id.* at 433. A review of the facts of the case at bar shows that the Plaintiff worked aboard Rig 17 for the great majority of his time as an employee of Teledyne; his assignments to Rigs 10

6. Rigs 17 and 16.

7. Rigs 10 and 4.

8. If the Plaintiff was a seaman, those two acts do not bar recovery under the Jones Act. 43 U.S.C. § 1331(b)(1); *Noble Drilling Co. v. Smith*, 412 F.2d 952, 955 (5th Cir.), *cert. denied*, 396 U.S. 906, 90 S.Ct. 221, 24 L.Ed.2d 182 (1969).

9. The Supreme Court granted review and reversed on the narrow issue of whether "loss of society" damages are recoverable, in addition to the statutory damages available under the Death On The High Seas Act, 46 U.S.C. § 761 et seq., where a seaman is killed more than a marine league from land.

and 4 lasted a total of eight days; the Plaintiff was to be transferred to Rig 16 as soon as a position became available. In light of these facts, and the fact that the Plaintiff was ordered by Teledyne to temporary assignments on its fixed platforms, the Court finds that the Plaintiff did not lose his status as a seaman because of such temporary assignments. The Plaintiff was a seaman within the meaning of the Jones Act and general maritime law on July 26, 1977.

## II

As Professors Gilmore and Black put it, "the shipowner's duty [under the Jones Act] may be higher than that of the shore employer and the quantum of negligence needed to establish his liability less." G. Gilmore & C. Black, *The Law of Admiralty*, § 6–35 at 376–77 (2d ed. 1975). Seamen are wards of the admiralty. *Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939); *Calmar Steamship Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938); *Reyes v. Vantage Steamship Co., Inc.*, 609 F.2d 140, 142 (5th Cir. 1980); 2 M. Norris, *The Law of Seamen*, § 576 at 97–98 (3d ed. 1970 & Supp.1979). It has been said that the shipowner owes the seaman an "obligation of fostering protection." *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 377, 53 S.Ct. 173, 176, 77 L.Ed. 368 (1932) (per Cardozo, J.). The law in this circuit has developed to the point that the employer's negligence need only be slight, and merely a contributing cause of the Plaintiff's injuries. *Reyes*, 609 F.2d at 146; *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977); *Sanford Brothers Boats, Inc. v. Vidrine*, 412 F.2d 958, 966 (5th Cir. 1969); *Offshore Co. v. Robison*, 266 F.2d 769, 780 (5th Cir. 1959).

Teledyne's employees were negligent in allowing the mats at the top of the stairs to the engine room of Rig 4 to·become full of drilling mud. *See McBride v. Loffland Brothers Co.*, 422 F.2d 363, 364 (5th Cir. 1970). Teledyne, therefore, breached its duty to the Plaintiff to provide him with a safe place to work. *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978), *modified on rehearing*, 606 F.2d 524 (1979); *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir. 1975); 2 M. Norris, *The Law of Seamen*, § 692 at 403 (3d ed. 1970 & Supp.1979). *Cf. Mahnich v. Southern Steamship Co.*, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). Such negligent breach of duty was at least a partial cause of the Plaintiff's injuries.

The Plaintiff was also negligent in failing to keep a lookout for his own safety. He did not look down at the steps before putting his foot there. The Plaintiff's negligence was a partial cause of his own injuries. The Court finds that Teledyne's negligence contributed to cause the Plaintiff's injuries in the proportion of 65%, and the Plaintiff's negligence contributed 35% to causing his own injuries.

## III

The Plaintiff also argues that Teledyne is liable to him under the general maritime law doctrine of unseaworthiness. Justice Brown wrote in *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), that "the vessel and her owners are . . liable to an indemnity for injuries received by a seaman in consequence of the unseaworthiness of the ship . . . ." *Id.* at 175, 23 S.Ct. at 487. The doctrine of unseaworthiness in seaman's personal injury actions "contemplates that a ship's hull, gear, appliances, ways, appurtenances and manning will be reasonably fit for its intended purpose." 2 M. Norris, *The Law of Seamen*, § 613 at 169 (3d ed. 1970 & Supp.1979). *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960); *Webb v. Dresser Industries*, 536 F.2d 603, 606 (5th Cir. 1976), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977); *Delome v. Union City Barge Line Co.*, 444 F.2d 225, 230 (5th Cir.), *cert. denied*, 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971).

The shipowner's obligation is to furnish a reasonably seaworthy *vessel. See, generally*, G. Gilmore & C. Black, *The Law*

of Admiralty, § 6–38 at 384 (2d ed. 1975); 2 M. Norris, *The Law of Seamen*, § 613 at 168 (3d ed. 1970 & Supp.1979). The shipowner is not to be held responsible for defective conditions off the ship. *Liner v. J. B. Talley and Co., Inc.*, 618 F.2d 327, 330 (5th Cir. 1980); *Klarman v. Santini*, 503 F.2d 29, 34 (2d Cir. 1974), *cert. denied*, 419 U.S. 1110, 95 S.Ct. 785, 42 L.Ed.2d 807 (1975); *Broussard v. Marine Transport Line, Inc.*, 369 F.Supp. 103, 105 (E.D.Tex.1974). The Plaintiff claims that the mud–filled mats rendered Rig 4 unseaworthy. It is clear, however, that Rig 4 is not a vessel but an artificial island, and is not subject to the maritime doctrine of unseaworthiness. The Plaintiff's cause of action based on unseaworthiness will, therefore, be dismissed.

## IV

Claims for maintenance and cure are reserved for seamen. *See* text accompanying note 5, *supra*. *See, generally*, G. Gilmore & C. Black, *The Law of Admiralty*, § 6–7 at 282 (2d ed. 1975). This remedy traditionally runs against the ship and the shipowner. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 547, 80 S.Ct. 926, 931, 4 L.Ed.2d 941 (1960); *Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943); *Wixom v. Boland Marine & Manufacturing Co., Inc.*, 614 F.2d 956, 957 (5th Cir. 1980). A worker who is a seaman for Jones Act purposes is also a seaman for purposes of maintenance and cure. *Braen v. Pfeifer Transportation Co.*, 361 U.S. 129, 132, 80 S.Ct. 247, 249, 4 L.Ed.2d 191 (1959); *Stokes v. B. T. Oilfield Services, Inc.*, 617 F.2d 1205, 1206 (5th Cir. 1980); *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 453 (5th Cir. 1980); *Vincent v. Harvey Well Service*, 441 F.2d 146, 148 (5th Cir. 1971); *Offshore Co. v. Robison*, 266 F.2d 769, 781 (5th Cir. 1959). To be entitled to maintenance and cure, the Plaintiff need only show that his injury occurred during his employment as a seaman; no causal connection to traditional seaman's duties is required. *Calmar Steamship Corp. v. Taylor*, 303 U.S. 525, 527, 58 S.Ct. 651, 652, 82 L.Ed. 993 (1938); *Liner v. J. B. Talley and Co.,*

*Inc.*, 618 F.2d 327, 332 (5th Cir. 1980); G. Gilmore & C. Black, *The Law of Admiralty*, § 6–8 at 288 (2d ed. 1975). No negligence or any other fault need be shown on the part of the shipowner to be entitled to maintenance and cure, since the payments "are predicated on the employment relationship itself . . . and are held forfeit only under certain well–defined and narrowly limited circumstances." *Oswalt v. Williamson Towing Co.*, 488 F.2d 51, 53 (5th Cir. 1974); *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962); *Liner*, 618 F.2d at 332.

The Plaintiff has shown that he was injured during his employment as a seaman. He is, therefore, entitled to maintenance and cure benefits. The parties have stipulated that the Plaintiff was paid maintenance and cure benefits at the rate of fifty–six dollars ($56.00) per week for a period of thirty–one (31) weeks, beginning August 14, 1978, and ending March 6, 1979. The Plaintiff was injured and forced to leave work on July 26, 1977. His right to receive maintenance and cure benefits accrued at that time. Teledyne is liable for maintenance and cure benefits at the rate of fifty–six dollars ($56.00) per week beginning on July 26, 1977, and ending August 14, 1978, which is a period of fifty–five (55) weeks.

The law is settled that an injured seaman is entitled to maintenance and cure until the point of maximum cure has been reached. *Farrell v. United States*, 336 U.S. 511, 519, 69 S.Ct. 707, 711, 93 L.Ed. 850 (1949). *See, generally*, G. Gilmore & C. Black, *The Law of Admiralty*, § 6–10 at 298 (2d ed. 1975).

The seaman's recovery must therefore be measured in each case by the reasonable cost of the maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained.

*Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 531, 58 S.Ct. 651, 655, 82 L.Ed. 993 (1938). The medical testimony in this case shows that the Plaintiff is likely to reach the point of maximum cure on November 20, 1980. Therefore, Teledyne is liable for maintenance and cure benefits at the rate of fifty–six dollars ($56.00) per week for the period beginning March 6, 1979, and ending November 20, 1980, which is a period of eighty–nine (89) weeks. Adding the previous figure to the last one, the Court finds that the Plaintiff is due maintenance and cure benefits at the rate of fifty–six dollars ($56.00) per week for a total period of one hundred forty–four (144) weeks, which is a sum of eight thousand and sixty–four dollars ($8,064.00).[10]

### V

The Court concludes that the Plaintiff has proved damages under the Jones Act in the sum of four hundred fifty–nine thousand, four hundred and eight dollars and eighty–one cents ($459,408.81). This amount is to be reduced by 35%, due to the Plaintiff's own negligence which contributed to causing his injuries. After this reduction, Teledyne is liable for the sum of two hundred ninety–eight thousand, six hundred fifteen dollars and seventy–three cents ($298,615.73). To be added to this figure are the Plaintiff's past and future maintenance and cure benefits at the rate of fifty–six dollars ($56.00) per week for a total of one hundred forty–four (144) weeks, which amounts to eight thousand and sixty–four dollars ($8,064.00). Together these two figures add up to three hundred and six thousand, six hundred seventy–nine dollars and seventy–three cents ($306,679.73). Teledyne is entitled to be reimbursed per the parties' stipulation for Longshoremen and Harbor Workers' Compensation benefits in the sum of twelve thousand, two hundred eighteen dollars and fifty–eight cents ($12,-218.58). Subtracting this amount from the next previous figure, the Court will render judgment in favor of the Plaintiff and

10. The Court's earlier findings as to medical expenses eliminate the cure aspect of the maintenance and cure remedy.

against Teledyne in the sum of two hundred ninety–four thousand, four hundred sixty–one dollars and fifteen cents ($294,461.15). Costs will be assessed against Teledyne.

The Plaintiff is directed to submit an appropriate judgment.

*It is so ordered.*