Katherine DUNN et al.,
Plaintiffs-Appellants,

v.

SEARS, ROEBUCK & CO. et al., Defendants,

Brasscraft Manufacturing Company, Inc. and Home Insurance Company, Defendants-Appellees.

No. 80–3539
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 16, 1981.

On Reconsideration May 21, 1981.
See 645 F.2d 511.

1. *Offshore Logistics Services, Inc., et al. v. Arkwright-Boston Manufacturers* (5th Cir. 1981).

Wendell H. Gauthier, Patrick J. McCabe, Kenner, La., Cyrus J. Greco, Baton Rouge, La., for plaintiffs-appellants.

Joseph Keogh, Baton Rouge, La., for Brasscraft Mfg. & Home Ins. Co.

Before GEE, RUBIN and RANDALL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This diversity action raises issues of Louisiana products liability law and federal procedure. Finding that the trial judge correctly interpreted Louisiana law and that the trial court's procedure conformed to federal standards, we affirm the judgment entered on a jury verdict for the defendant.

After James and Frank Dunn were killed and Ivory Dunn was injured in an explosion apparently caused by a gas leak from a stove or its connections, suit was filed against Roper Corporation and Sears, Roebuck & Co., alleging a defect in the stove manufactured by Roper and sold by Sears; against Amoco Oil Company and its insurer, alleging defects in the propane gas supplied by Amoco and negligence in its failure to inspect the premises; and against Brasscraft Manufacturing Company, Inc. and its insurer, alleging defects in the flexible brass connection that attached the stove to the fuel line and failure to warn users of defects and potential defects in the brass connection manufactured by Brasscraft. Before trial, a summary judgment was entered dismissing Sears and Roper. The plaintiffs compromised their claims against Amoco and its insurer. Meanwhile, the trial judge had ordered a separate trial of liability and damage issues.

Amoco's employees had been deposed and their testimony was potentially damaging to the plaintiffs. One of the terms of the settlement agreement between the plaintiffs and Amoco was that Amoco would not make those employees available to the remaining defendants, Brasscraft and its insurer, Home Insurance Company. When, only two or three days before trial, counsel for Brasscraft and Home learned of the terms of the agreement, he protested to the trial judge. The trial judge informed plaintiffs' counsel that this provision was invalid and that he would not enforce it, although he would enforce the remaining provisions of the settlement agreement. Counsel for plaintiffs and defendants spent much time discussing this matter on the weekend preceding the commencement of the trial on Monday. At trial the judge ruled the testimony of the Amoco employees admissible over the plaintiffs' objection and the defendants introduced the depositions of Amoco's employees in support of their case.

Based on estimates of trial time provided by counsel, the trial judge informed the prospective jurors during the voir dire that the trial would last only two or three days. In fact, the plaintiffs took two days to present their case and the trial of the liability issues lasted a total of five days, ending on Friday. In his opening remarks the trial judge instructed the jury that, because the trial of the liability issue had been bifurcated from the issue of damages, if they found the defendants liable, they would hear additional evidence before determining the amount of damages to be awarded. At the close of the evidence and before closing arguments, the trial judge assured the jury that they would get the case that day, decide it that day and go home that night. No further explanation regarding the fact that a judgment of liability would require the jury to return to hear evidence on damages was given at that time. The jury deliberated until 7:55 p. m. Friday and returned a verdict in favor of the defendants. The plaintiffs now assert dramatically, "Error, error, error!" We deal separately with each of their specifications.

### I. No One Owns the Witnesses

The witnesses do not belong to the parties. The jury was entitled to hear all the relevant evidence and it was improper for any party to attempt to exclude relevant testimony by a settlement agreement. The Federal Rules of Evidence abandon the ancient premise that each party vouches for his witness, for a party may often be obliged to call persons who know the facts without giving them his imprimatur. *See* Rule 607, Fed.R.Evid. *See also* S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 297 (2d ed. 1977); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 607[01] (1978). The trial judge acted in the interests of justice in tearing down the wall plaintiffs' counsel sought to build around unfavorable testimony. Due to potential conflicts of interest, neither of Amo-

co's employees testified at trial, but their depositions were properly introduced into evidence.

Defense counsel apparently first raised the issue in an ex parte conference with the trial judge. The judge did not, however, make his final ruling concerning it until he had given plaintiffs' counsel a chance to be heard. Counsel's argument over the matter, indeed, is what consumed some of the lamented lost weekend. It is doubtless best for judges never to confer with counsel in a pending case ex parte, but, considering the circumstances, we cannot fault the procedure followed. Moreover, the final ruling was correct and no prejudice is shown to have been suffered as a result of the procedure followed.

## II. Qualification of Experts

■■■ Employees of Amoco were accepted by the court as experts. That a witness is an employee of a party does not preclude his qualification as an expert. *Accord,* Fed. R.Civ.P. 26(b)(4) and 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2033 (1970) (Advisory Committee Notes to the federal rule indicates that an expert regularly employed by a party is not immune from discovery). His potential bias may be explored on cross-examination and argued to the jury. His qualification, however, depends on his knowledge, skill, experience, training or education. Rule 702, Fed.R.Evid. The trial judge is afforded the widest possible discretion in determining the qualification of a witness as an expert. *See Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir. 1979); *Miley v. Delta Marine Drilling Co.,* 473 F.2d 856, 858 (5th Cir.), *cert. denied* 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973). *See also* 11 Moore's Federal Practice § 702.10[3] (2d ed. 1976); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] (1978). In this case that discretion was properly exercised.

## III. Jury Animosity

■■■ On the fourth day of trial, one juror was heard to say to another, "Another goddamn day." The plaintiffs asked the court to order a new jury impaneled on damages and to inform the jury that they would be discharged after determining liability. The plaintiffs did not seek a mistrial nor did they ask to strike the complaining juror.

There is a still unanswered question whether the seventh amendment right to a jury trial permits the separate phases of a trial to be submitted to different juries. *See Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 318 (5th Cir. 1978); *Swofford v. B & W, Inc.,* 336 F.2d 406, 415 & n. 11 (5th Cir. 1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); *Link v. Mercedes-Benz of North America, Inc.,* 550 F.2d 860, 866 (3d Cir.), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (Seitz, C. J., concurring); *Arthur Young & Co. v. United States District Court,* 549 F.2d 686, 693 (9th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977) (submission of distinct issues concerning defenses to different jury does not violate seventh amendment); *In re Master Key Antitrust Litigation,* 528 F.2d 5, 15 (2d Cir. 1975); *Hosie v. Chicago and North Western Railway Co.,* 282 F.2d 639, 642 (7th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 s.Ct. 695, 5 L.Ed.2d 693 (1961); *Martin v. Bell Helicopter Co.,* 85 F.R.D. 654 (D.Colo.1980). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2391, at 302 (1971). It was wise for the trial judge to avoid the constitutional problem if he could properly do so. The trial judge acted within his discretion in denying the request to impanel a new jury for the trial of the damages issue. There was no indication that any juror's verdict was tainted, nor is there any indication that the remark represented anything but impatience with a slow pace. Lawyers may expect jurors patiently to abide all their foibles, and, indeed, in the best of worlds, judges and jurors would be endowed with superhuman compassion. Not every manifestation of irritation with a slow trial, however, is sufficient to warrant a new start.

## IV. Sufficiency of the Evidence

■■■ The seventh amendment forbids appellate judges to sit as post-trial assessors and denies them the power to vacate

awards because they might, as fact-triers, have decided differently. *See Lucas v. American Manufacturing Co.*, 630 F.2d 291, 293 (5th Cir. 1980) (in light of the seventh amendment an appellate court should proceed cautiously when asked to set aside a jury's verdict). Moreover, the plaintiffs did not move for a directed verdict or a judgment n. o. v. In the absence of a motion for directed verdict, the sufficiency of the evidence supporting the jury's findings is not reviewable on appeal. *Liner v. J. B. Talley and Co.*, 618 F.2d 327, 331 (5th Cir. 1980); *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024 (5th Cir. 1979); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir. 1978); *Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir. 1977). *See* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2536, at 593 (1971). Our inquiry is, therefore, "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Coughlin v. Capitol Cement Co.*, 571 F.2d at 297; *Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 511 (5th Cir. 1970).

The motion for a new trial after entry of judgment does not enlarge the scope of our review. *Coughlin v. Capitol Cement Co.*, 571 F.2d at 297–98; *Little v. Bankers Life & Casualty Co.*, 426 F.2d at 511. We review the denial of a motion for new trial based on insufficiency of the evidence only to determine whether there was an "absolute absence of evidence to support the jury's verdict." *Fugitt v. Jones*, 549 F.2d at 1004; *Litherland v. Petrolane Offshore Construction Services, Inc.*, 546 F.2d 129, 134 (5th Cir. 1977); *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973).

■ The evidence was contradictory concerning whether Brasscraft's flexible brass connector was the cause of the fire and, if so, whether it was defective. The plaintiffs attempted to prove that a piece of brass tubing manufactured by Brasscraft was the cause of the fire. There was evidence that the house was put together by the Dunn family from second hand materials. A fire reconstruction expert listed several possible causes of the fire more probable than failure of the tubing. The deposition of the expert witness employed by Amoco contradicted and explained the testimony of plaintiffs' witnesses. Thus, there was sufficient evidence to support the verdict for the defendant under the applicable standard of review. The trial court did not abuse its discretion by denying the plaintiffs' motion for a new trial. *Coughlin v. Capitol Cement Co.*, 571 F.2d at 298; *Litherland v. Petrolane Offshore Construction Services, Inc.*, 546 F.2d at 134.

## V. Jury Charge

■ The charge instructed:

[I]t is necessary that the plaintiffs prove by the preponderance of the evidence ... that the product was made by Brasscraft, and as made, it had a defect which existed at the time of the manufacture....

The charge is alleged to be erroneous because the trial judge failed to track precisely the language of *Weber v. Fidelity & Casualty Insurance Co.*, 259 La. 599, 250 So.2d 754 (1971), the case that describes the elements of a products liability action in Louisiana. However, the trial judge did not stop with the language quoted. He went on to explain in adequate detail what would constitute a defect existing at the time of manufacture. The charge, read as a whole, was accurate.

The plaintiffs objected to Interrogatory Number 1 which asked the jury to determine whether the tubing was defective when manufactured and sold by Brasscraft. In light of the extensive explanation in the jury charge as to what constitutes a defect, including an instruction that a failure to warn of the possibility that the product can become dangerous from normal use will make the product defective, we find the interrogatory not misleading and sufficient to include both a defect caused by a dangerous propensity of the product as well as a defect due to a failure to warn of such a propensity.

We have reviewed the charges and the jury interrogatories in light of the claim that they called special attention to Amoco, who was no longer a defendant. The trial judge properly instructed the jury that Sears and Amoco had earlier been parties to the litigation, but neither was any longer involved. The jurors were admonished not "to concern yourselves with the reason why they are no longer in the litigation." However, the judge did instruct the jury as to possible bases of liability of Amoco because the defendants' counsel had argued to the jury that the injuries were caused by the fault of Amoco rather than by a defect in the tubing.

 Because the plaintiffs failed to object to the jury charges concerning Amoco's liability before the jury retired to deliberate, the giving of those instructions may not now be assailed on appeal. Fed.R. Civ.P. 51. Although we may consider errors in jury instructions to which no objection was made under the "plain error" doctrine, *Delancey v. Motichek Towing Service, Inc.*, 427 F.2d 897, 901 (5th Cir. 1970), *Patton v. Archer*, 590 F.2d 1319, 1322 (5th Cir. 1979), we have recognized that the plain error exception to Fed.R.Civ.P. 51 is confined to the exceptional case where the error has seriously affected the fairness and integrity of the proceedings. *Liner v. J. B. Talley and Co.*, 618 F.2d 327, 329–30 (5th Cir. 1980); *Patton v. Archer*, 590 F.2d at 1322. The inclusion of the jury charges relating to Amoco was not error so fundamental as to result in a miscarriage of justice.

The plaintiffs also failed to object to the inclusion in the interrogatories propounded to the jury of several questions relating to Amoco's liability. However, the jury never reached these questions. It answered the first interrogatory pertaining to Brasscraft in the negative and went no further. We do not find the mere propounding of these interrogatories likely to cause jury confusion or otherwise to require reversal of the jury verdict.

## VI. The Other Complaints

 The photographs referred to by a witness in his deposition were not offered as exhibits when the deposition was taken. At the trial, the defendants offered them in conjunction with the deposition. The photographs were sufficiently identified. Rule 901(a), Fed.R.Evid.

 The trial judge did not err either in permitting a deposition to be provided to the jury during its deliberations at the jury's request or in admonishing them not to put too much weight on one piece of evidence. He had discretion to grant or deny the request. When he decided to comply with it, there was good reason for him to suggest that this testimony not be overemphasized.

The trial judge did not allow Exhibit P–8, which showed the chemical analyses of the brass tubing and compositions required by various standards, to be taken to the jury room with the other exhibits. He sent it to the jury after they had been deliberating for approximately one hour. This was forty-five minutes before they reached a verdict. We are unable to perceive any prejudice resulting from the delay.

 The trial judge also acted within his discretion in refusing to excuse for cause a juror whose wife and daughter worked for an insurance company.

The trial was fundamentally fair. It was hard fought by counsel and the trial judge made countless rulings. His conduct of the trial was impartial and his rulings were considered. Perfection is not exacted by the Constitution, nor can infallibility be expected either of judges or of counsel. We do not perceive the denial of due process that the plaintiffs now lament.

Accordingly, the judgment is AFFIRMED.