IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 95-50834

Summary Calendar

———————————

WILSON SOPER & ESTATE OF RONALD SOPER,

Plaintiffs-Appellees,

and

RELIANCE INSURANCE COMPANY,

Intervenor-Plaintiff-
Appellee,

versus

SIDNEY MANUFACTURING COMPANY,

Defendant-Appellant.

———————————

Appeal from the United States District Court
For the Western District of Texas
(W-94-CV-221)

———————————

July 25, 1996

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Decedent Ronald Soper and his father sued Sidney Manufacturing

Company on theories of product defect and failure to warn.  Soper,

a construction worker, was installing and constructing a manlift

———————————

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

manufactured by Sidney when he fell some 170 feet to his death. Plaintiffs' theory of the case was that defendant negligently manufactured one of the brake "shoes" or "dogs" in the manlift such that it did not properly align with the lift's guide rail. This misalignment rendered the shoe's teeth unable to bite with force sufficient to keep the manlift from falling. Plaintiffs also alleged that the defendant negligently failed to warn potential users that they should not rely solely on the emergency braking system during installation. Sidney defended on three grounds: first, that no misalignment in fact existed; second, that Soper caused the accident by fiddling with the brake shoe; and third, that Soper's own failure to wear a safety rope contributed to his death. A jury found the decedent 40% responsible for his own death and Sidney 60% responsible. The jury further found that the decedent's estate suffered $250,000 in losses, and that Soper's father lost an equal amount. After adjusting for certain stipulated expenses and for the findings of comparative fault, the district court ordered Sidney to pay plaintiffs $311,415.52, plus interest.

Sidney's appeal rests on three primary arguments. First, Sidney contends that the evidence was insufficient to support a jury finding of liability on any of the plaintiffs' theories. Second, Sidney disputes the trial judge's decision to allow plaintiffs to present evidence of three prior accidents involving the failure of the brake shoe system. Third, Sidney complains of

the limits the trial judge placed on the cross-examination of plaintiffs' expert witness, Bill Stanfield.

We have little difficulty disposing of Sidney's first two arguments. The testimony of Stanfield, along with the plaintiffs' other evidence, was sufficient to allow a rational jury to find that Sidney's negligent manufacture and failure to warn in part caused Soper's death. In addition, the trial court correctly concluded that the three prior accidents were relevant to the issue of whether Sidney had notice of the frailty of its brake shoe system, a question important to plaintiffs' failure to warn theory.

We find the matter concerning the cross-examination of Stanfield close. Immediately after the accident, intervenor Reliance Insurance Company, the workers compensation carrier for Soper's employer, hired engineer Stanfield's firm to investigate the accident. Accordingly, from the beginning, Stanfield had a financial incentive to find that the negligence of someone other than Soper's employer caused the accident. Stanfield ultimately became the plaintiffs' primary witness on defect and failure to warn. At opening statement and closing argument, plaintiffs' counsel sought to bolster Stanfield's credibility by implying that he was a neutral investigator at the time he reached his conclusions. During opening, counsel stated that Stanfield "was called, not by the Plaintiffs and not by Sidney, to come down there and figure out what the heck happened." Counsel later added, "We will pay for him to come and testify and tell you what he did." At

closing, counsel made the same sort of factually true statements designed to imply that Stanfield reached his conclusions before any financial incentive to fabricate arose. Counsel argued,

> We didn't hire Mr. Stanfield to make his investigation. He reached these conclusions before we ever met Mr. Soper. We brought him here. We wanted you to -- to hear him -- what he had found. We paid for him to be here. I'm not going to -- I'm not going to tell you that's not the case. But he reached these conclusions and took these pictures before I ever met Wilson Soper. This isn't something we cooked up for you. This is something that was found out immediately after the accident.

Before cross-examination began, defense counsel asked the court to rule that he could question Stanfield regarding subrogation and the potential for bias inherent in the fact the workers compensation carrier originally sent Stanfield to the scene. Defense counsel in particular referred to the plaintiffs' opening statement implying Stanfield's neutrality at the time he made the investigation. The court responded, "I don't believe that there's any indication that he would have a bias simply because he was first employed by the insurance company, so I'm going to deny that request."

On cross-examination, the defense elicited from Stanfield testimony that the plaintiffs were paying his firm for his testimony, and that he worked full time for an engineering firm specializing in providing expert testimony. In particular, the following colloquy occurred:

Q    And now you've gone to work for this company called AID, right?

4

```
A    Yes.
Q    And they specialize in litigation engineering, that
is, doing what you're doing here today, isn't that right?
A    Yeah. . . .
```

Defense counsel then asked a further series of questions emphasizing Stanfield's extensive experience as an expert trial witness as well as his financial ties to the plaintiffs. Defense counsel made an offer of proof, but did not object to the quoted portion of plaintiffs' closing argument.

The trial judge's decision that no potential for bias stemmed from the fact that Stanfield investigated at the behest of the workers' compensation carrier was erroneous. The parties agree that Texas's collateral source doctrine made the fact that plaintiffs received workers compensation benefits irrelevant to the issues of damages and right to recover. Nevertheless, the collateral source rule removes only one theory of relevance for this evidence. Evidence irrelevant on one issue may well be relevant on another. In this context, we find the defendant's analogy to Fed. R. Evid. 411 well-taken. The first sentence of this rule renders evidence of liability insurance inadmissible if offered to prove one issue, namely, whether a "person acted negligently or otherwise wrongfully." The rule's second sentence, however, clarifies that evidence of liability insurance may well be admissible to show bias.

The fact that an expert investigates on behalf of an insurance company with an incentive to find someone else negligent is

5

relevant to show bias. An investigator working for a workers compensation carrier has a financial motive to find, as Stanfield did, that someone other than the employer negligently caused an accident. The potential for bias arises as soon as relationship between the expert (or his firm) and the carrier arises.

In this case, Stanfield was the plaintiffs' expert on causation, defect, and failure to warn. His financial incentive to lie or to construe the evidence in a manner favorable to the carrier, and favorable to the plaintiff, was relevant. As plaintiffs point out, Fed. R. Evid. 403 gives the trial court broad latitude regarding the admission of evidence, and proof of the receipt of workers compensation benefits carries the danger that the jury will draw a prohibited inference regarding the damages a deserving plaintiff will receive. Had the trial court exercised its discretion under Rule 403 and found the evidence more prejudicial than probative, our decision would be rather straightforward. But the record includes no indication that the trial court exercised its discretion. On the contrary, the court's comments make clear that it thought the evidence irrelevant and therefore inadmissible under Fed. Rs. Evid. 401-02. We cannot agree.

We do agree with the plaintiffs, however, that this error did not affect Sidney's substantial rights. See Fed. R. Civ. P. 61; Fed. R. Evid. 103(a). The defendant elicited testimony from Stanfield that he was being paid several thousand dollars by the

plaintiffs at the time of trial, and that he worked as a litigation expert full-time. Defense counsel used this evidence at closing, arguing that Stanfield was not an independent witness. Moreover, Reliance's recovery was only for $19,025.88, its subrogation interest. In light of this evidence and argument, we do not believe that the disclosure of still another financial incentive for Stanfield to stretch the evidence in plaintiffs' favor would have affected the jury's verdict. No reasonable possibility exists that this error affected Sidney's substantial rights. See Miles v. Olin Corp., 922 F.2d 1221, 1229 (5th Cir. 1991); Liner v. J.B. Talley & Co., 618 F.2d 327, 331 (5th Cir. 1980). Accordingly, we find the trial court's error harmless.

AFFIRMED.