L BYRNES, Judge.
SubSea International, Inc. (“SubSea”) appeals a judgment awarding damages to SubSea’s employee, Chad E. Wood, for injuries sustained while he was a seaman performing his duties as a diver tender on a fixed platform in the Gulf of Mexico. We affirm as amended.
The accident occurred on August 30, 1994 when Wood was tending the diving hose of a SubSea diver, Kurt Hopper, making a dive off the fixed platform, Nor-cen Exploration Rig No. 306-B. When the diver was approximately 90 feet below the surface, Wood received instructions from the dive van to come up on the diver’s hose. Wood testified that the dive van was approximately 8 to 10 feet from where he was standing. When the diver was coming up on the diver’s hose, Wood felt a pain in his back but continued the recovery operation of the hose. Wood told Brian Hallenburg, the lead tender on the job, that his back was hurting after Wood recovered about 20 feet of hose.
Wood saw Dr. Charles Anastasio in Belle Chasse, Louisiana on September 2, 1994. Dr. Anastasio advised Wood to take it easy for a couple of days and gave Wood a full duty release. Wood returned to work on September 19, 1994. He ^continued to work until he stopped on November 15, 1994 because of pain in his lower back and leg.
*566 Wood was examined by Dr. Thomas L. Cashio, an orthopedic surgeon who found a herniated disc and referred Wood to Dr. Gorbitz, a neurosurgeon who first saw Wood on December 22, 1994. Dr. Gorbitz confirmed the diagnosis of a herniated disc, and in January 1995, Dr. Gorbitz recommended that Wood undergo surgery. On February 10, 1995 Dr. Gorbitz performed a lumbar laminectomy and discec-tomy at L3^4 at West Jefferson Hospital. On May 1, 1995, Dr. Gorbitz released Wood from his care.
After leaving his employment at SubSea, Wood worked at his father-in-law’s company, Hill City Oil. Starting as an assistant manager, he was promoted to supervisor earning $22,000 annually at the time of trial.
Wood filed suit against SubSea in August 1995 in Orleans Parish. Thereafter on a joint motion, the case was transferred to Plaquemines Parish in October 1995. After a bench trial on November 25, 1997, the trial court entered a judgment and thereafter an amended judgment on December 2, 1998, reflecting computational corrections. The trial court awarded the plaintiff $381,778 including the following general and special damages:
Past physical pain and suffering $ 60,000
Future physical pain and suffering 20,000
Past mental pain and suffering 30,000
Future mental pain and suffering 36,000
Past lost wages 29,778
Loss of future earnings capacity 217,000
TOTAL: $381,778
The trial court’s judgment also included legal interest from the date of injury for all past damages, and legal interest from the date of judgment for all future damages and for SubSea to pay all costs of the proceedings.
l.qOn appeal SubSea contends that the trial court erred in: (1) finding that Wood was a Jones Act seaman; (2) finding that SubSea was negligent and that plaintiff was not comparatively negligent; and (3) using the wrong legal standard in assessing damages and failing to consider necessary business expense deductions.

Seaman Status

SubSea argues that Wood did not qualify as a seaman under the Jones Act, 46 U.S.C. § 688. In Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995), the United States Supreme Court provided the following criteria to determine that one qualifies as a seaman if:
(1) The employee’s duty contributes to the function of the vessel or the accomplishment of its mission; and
(2) The seaman has a connection to a vessel in navigation that is substantial in its terms of both its duration and nature.
That Court stated that: “a seaman’s job need not be limited to transportation-related functions that directly aid in the vessel’s navigation. We now determine what relationship a worker must have to the vessel, regardless of the specific tasks the worker undertakes, in order to obtain seaman status.” Id., 515 U.S. at 350, 115 S.Ct. 2172, 132 L.Ed.2d 314.
SubSea argues that Wood did not have a substantial connection to a vessel or identifiable fleet of vessels in navigation. Wood was injured on a fixed platform and was not independently associated with a vessel. SubSea did not own the platform. A worker injured on a fixed platform cannot claim seaman’s remedies unless he is independently associated with a vessel under the Chandris criteria. Longmire v. Sea Drilling Corp., 610 F.2d 1342, 1347 (5 Cir.1980).
|4SubSea asserts that Wood’s testimony that 90 percent of his work was done on vessels is not supported by documentation. SubSea notes that Wood’s work log showed that he worked in SubSea’s shop in Belle Chasse, on fixed platforms and aboard seven different vessels. Therefore, plaintiff cannot be considered to be independently associated with a vessel. The vessels were not under one control and did not act together as one fleet. SubSea submits that Wood did not present any evidence that establishes any degree of *567 control over the non-SubSea owned vessels. SubSea rejects Wood’s hearsay testimony that the captains of third-party vessels were given instructions by SubSea as to where they wanted to go.
SubSea notes that in Etheridge v. Sub Sea International, Inc., 806 F.Supp. 598, 602 (E.D.La.1992), the federal district court found that: “Odeco could tell the captain where to go and why, but it had no control over how to get there and could not order the captain to operate the boat in a certain way.” The federal district court held that SubSea did not have “control” over the vessels on which the plaintiff worked to potentially afford him seaman status.
In Chandris, the United States Supreme Court referred to Barrett v. Chevron, USA Inc., 781 F.2d 1067 (5 Cir.1986), which stated that the worker “performed seventy to eighty percent of his work on platforms and no more than twenty to thirty percent of his work on vessels. Because he did not perform a substantial portion of his work aboard a vessel or fleet of vessels, he failed to establish that he was a member of the crew of a vessel.” Id., 781 F.2d at 1076.
In Wallace v. Oceaneering International, 727 F.2d 427, 432 (5 Cir.1984), the federal Fifth Circuit opined that: “the total circumstances of an individual’s employment must be weighed to determine whether he had sufficient relation to |Bthe navigation of vessels and the perils attendant thereon.” That Court found that a commercial diver was a seaman, stating:
A diver’s work necessarily involves exposure to numerous marine perils, and is inherently maritime because it cannot be done on land.
* * *
... We hold that a commercial diver, who embodies the traditional and inevitably maritime task of navigation, has the legal protections of a seaman when a substantial part of his duties are performed on vessels. It is the inherently maritime nature of the tasks performed and perils faced by his profession and not the fortuity of his tenure on the vessel from which he makes the particular dive on which he was injured, that makes [a worker] a seaman.
Id., 727 F.2d at 436.
In Wisner v. Professional Divers of New Orleans, 98-1755 (La.3/2/99), 731 So.2d 200, the Louisiana Supreme Court held that a commercial diver, who spent 90 percent of his time working from vessels, was a seaman.
In its reasons for judgment in the present case, the trial court acknowledged that at the time of his injuries, Wood was not acting in the capacity as a commercial diver. The trial court noted that Wood testified that 90-95 percent of his work was done on vessels either assisting other divers or making dives himself. Wood was working on a fixed platform assisting another diver as a diver tender when Wood was injured. The trial court stated that: “Wallace did not require that a diver be injured while working off a vessel, only that ‘a substantial part of his duties are performed on vessels.’ ” The trial court in the present case adopted “the rationale of Wallace that a commercial diver that performs a substantial part of [his] work assignment diving off of vessels, is in fact a vessel (or [at] least an extension of a vessel) and those who are directly assigned to the mission of the diver are in fact ‘members of the crev/ of the diver/vessel.”
IfiThe trial court found that Wood worked between 100-103 days for SubSea prior to leaving because of his injuries. Wood’s work log shows that Wood spent approximately 70 days of his employment in the service of vessels. Of that 70 days, 29 days were spent in service of vessels owned by SubSea. Under Barrett, supra, Wood exceeded the 30 percent requirement, and under Wallace, Wood spent a substantial amount of time in the service of vessels. A substantial part of his duties are performed on vessels. Wood’s em *568 ployment as a diver tender was inherently maritime in the nature of the tasks performed and perils faced by his profession and not the fortuity of his tenure on the platform from which he was injured when pulling up on the diver’s hose. The trial court did not err in finding that Wood satisfied the requirements of seaman status and his employment was covered under the Jones Act.

Negligence

SubSea contends that the trial court erred in finding that SubSea was negligent and that Wood was not comparatively negligent for his injuries. SubSea avers that it acted at all times in a manner consistent with a finding of ordinary prudence under the circumstances and any injuries resulted from Wood’s own fault and/or negligence and/or want of due care.
SubSea points out that Cecil Thompson, the diving supervisor, testified that there were daily safety meetings that Wood was required to attend. Thompson stated that at the safety meetings he explicitly stated that he wanted two tenders on a diver’s hose at all times when the hose was being recovered. SubSea claims that despite Thompson’s repeated statements, Wood chose to disregard Thompson’s orders and did not ask for any assistance when he pulled up the slack on the hose even though he was only eight to ten feet from the door of the dive van.
[7Admiralty claims may be brought in federal court pursuant to its admiralty jurisdiction or in state court under the savings to suitors clause; in either case, federal substantive maritime law applies. Antill v. Public Grain Elevator of New Orleans, Inc. 577 So.2d 1039 (La.App. 4 Cir.1991), writ denied 581 So.2d 684 (La.1991). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable care under the circumstances. Foster v. Destin Trading Corp., 96-0803 (La.5/30/97), 700 So.2d 199, 208.
Factual findings made by the trial court in a claim under general maritime law are reviewed under a clearly erroneous standard, which is the same manifestly wrong or clearly wrong standard of review used by the Louisiana appellate courts in reviewing factual findings of lower courts. Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App. 4 Cir.1992), writ denied 613 So.2d 996 (La.1993), certiorari denied sub nom. Brown & Root, Inc. v. Mistich, 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993). If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though it is convinced that if it had not been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
Issues of negligence and causation in admiralty cases are treated as fact questions. Johnson v. Offshore Exp., Inc., 845 F.2d 1347, 1352 (5 Cir.1988), certiorari denied sub nom. Offshore Exp., Inc. v. Johnson, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Under maritime law proximate cause requires proof of direct and substantial cause which in a direct unbroken sequence produces the injury complained of and without which such injury would not have happened. Alverez v. J. Ray McDermott & Co., Inc., 674 F.2d 1037, 1043 (5 Cir.1982); | Olympic Towing Corp. v. Nebel Towing Co., 419 F.2d 230, 233 (5 Cir.1969), certiorari denied sub nom. Nebel Towing Co. v. Olympic Towing Corp., 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970). A court sitting in admiralty apportions damages in accordance with principles of comparative negligence. Vulcan Materials Co. v. Vulica Shipping Co., Ltd., 859 F.Supp. 242, 250 (W.D.La.1994).
SubSea was negligent for failing to provide a second tender to assist in the diving operations; however, SubSea argues that Wood was comparatively negligent because he failed to request assistance. Wood was *569 expected to have the standby tender or standby diver assist him as he had been instructed to do at the morning safety meeting.
Wood’s actions amount to what we would ordinarily find to be comparative negligence, and at this point we would assign the lowest percentage of comparative negligence on Wood’s part that is reasonably within the discretion of the trial court in order to rectify the trial court’s failure to allocate any of the negligence to plaintiff. Clement v. Frey, 95-1119, 95-1163, p. 8 (La.1/16/96); 666 So.2d 607, 611.
However, Wood asserts, in effect, that because he was instructed to bring up the diver’s hose, he cannot he held to be comparatively negligent in proceeding in the face of a known risk. Where an employee takes actions pursuant to the discharge of his employment duties in the face of a known risk, which actions are reasonable in relation to those duties, then the employee is not comparatively negligent. Bergeron v. Blake Drilling & Workover Co., 599 So.2d 827, 843-844 (La.App. 1 Cir.1992); ivrit denied 605 So.2d 1117, 1119 (La.1992). What actions are reasonable under the circumstances is a question of fact to be determined by the fact finder. Factors to be | ¡¡considered in determining what is reasonable include the availability and practicability of other options. Feurtado v. Zapata Gulf Marine Corp., 99-1510 (La.App. 4 Cir. 1/12/2000), 751 So.2d 379. See also Richard v. St. Paul Fire and Marine Ins., 94-2112, p. 6-7 (La.App. 1 Cir. 6/23/95); 657 So.2d 1087, 1091.
In the present case, the trial court stated:
Diver tenders are literally the “lifeline” of a diver. It would have been gross neglect of his duty for plaintiff to abandon his station and seek out another tender for help. It was his employer’s responsibility to provide the manpower necessary for the safety of the diver. Plaintiffs supervisor was in the dive van located near plaintiffs station and it was his responsibility to assign the additional tender to assist plaintiff. Plaintiff cannot be found at fault for singlehandedly trying to assist the diver in the “coming up” portion of the dive.
We cannot say that the trial court was manifestly erroneous in implicitly deciding that Wood’s actions were reasonable in believing that the proper discharge of his employment duties required that he bring up the diver’s hose by himself pursuant to his supervisor’s instructions. This is not the same as saying that this Court would not have weighed the evidence differently had it been sitting as the original finder of fact.

Damages

SubSea contends that the trial court erred in applying the wrong legal standard in assessing damages and in failing to consider necessary business expense deductions. SubSea asserts that the trial court’s damage assessment mirrors that of Dr. Melville Wolfson, plaintiffs forensic economic expert, and assumes that the trial court adopted Dr. Wolfson’s opinions. SubSea argues that the trial court erroneously applied the wrong legal standard in addressing the damage issue because the award was based on after tax dollars without consideration for the necessary business |inexpense deductions.
In Jones Act cases, a damage award for future loss wage should be based on “after deductions dollars.” Future loss wage calculations of maritime cases are to comply with the four factors stated in Jenkins v. Kerr-McGee Corp., 613 So.2d 1097, 1104 (La.App. 3 Cir.1993), unit denied 616 So.2d 702 (La.1993), referring to Culver v. Slater Boat Co., 722 F.2d 114 (5 Cir.1983) (en banc), cert. denied sub nom., Heinrich Schmidt Reederei v. Byrd, 467 U.S. 1252, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984):
(1) Estimate the loss of work life resulting from injuries;
(2) Calculate the lost income stream;
*570 (3) Compute the total amount of damages; and
(4) Discount the total amount to its present value.
See also Cappiello v. Exxon Corp., 96-2418 (La.App. 4 Cir. 5/28/97), 695 So.2d 1097. The lost income stream is calculated by adding gross income at the time of injury to other income (fringe benefits), and then subtracting required payments by the wage earner (such as taxes and work expenses). Jenkins, supra.
The district court’s determination of the amount of damages in a maritime case may not be overturned unless clearly erroneous. Brunet v. United Gas Pipeline Co., 15 F.3d 500 (5 Cir.1994). Unless persuaded that the judge’s decision is a clear abuse of discretion, the appellate court must accept the trier of fact’s determination as to quantum. Myers v. Pennzoil Co., 889 F.2d 1457 (5 Cir.1989). The discretion vested in the trier of fact is “great”, and even vast in determining the amount of damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), certiorari denied sub nom. Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). |nWhere there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are reasonable. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326.
Loss of earning capacity, not just pecuniary loss, is the basis for assessing loss of wages. Folse v. Fakouri, 371 So.2d 1120 (La.1979). In Finnie v. Vallee, 620 So.2d 897, 900-901 (La.App. 4 Cir.1993), writ denied, 625 So.2d 1040 (La.1993), this court stated:
Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person’s potential. Earning capacity is not necessarily determined by actual loss. While the plaintiffs earnings at the time of the accident may be relevant, such figures are not necessarily indicative of her past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiffs lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. Hobgood v. Aucoin, 574 So.2d 344, 346 (La.1990). The trial court should consider whether and how much the plaintiffs current condition disadvantages him in the work force. The trial court should then ask itself what the plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.
In the present case the trial court did not give plaintiff an award for future loss of wages but awarded plaintiff $217,000 for loss of earning capacity. Plaintiff did not continue to work as a diver, and he was employed by his father-in-law at Hill City. The trial court properly awarded plaintiff because of the loss of his future earning capacity to work as a diver, which is what plaintiff would have preferred to do.
SubSea maintains that Dr. Wolfson testified that he did not take into account any adjustment for job-related expenses when calculating Wood’s past and future | ^economic loss.

Past Lost Wages

Dr. Wolfson estimated that plaintiff lost wages from November 15, 1994 until November 25, 1997, which was the time of the plaintiffs termination with SubSea until the time of trial. Dr. Wolf-son determined that past lost wages were $29,778, giving credit for wages earned at Hill City Oil. SubSea claims that the trial court erroneously relied on that figure without deducting the plaintiffs employee business expenses.
Jennifer Palmer, SubSea’s vocational rehabilitation expert, testified that Wood *571 would have substantial, recurring and deductible work related expenses if he remained in the commercial diving industry. Dr. Kenneth Boudreaux, SubSea’s forensic economic expert, testified that Wood was paid $22,197 in 1994 and reported recurring working expenses of $10,498. Dr. Boudreaux explained that the only nonrecurring expense was $2,500 for a diver’s hat. He determined that the expenses approximated $12,000 minus $2,000 to equal $10,000 for non-recurring expenses such as travel expenses. Dr. Boudreaux stated that in 1993, Wood’s recurring work expenses equaled $8,000.
Dr. Boudreaux found that at $8 an hour, Wood earned $27,800 a year less $10,000 working expenses to equal $17,800 a year. Dr. Boudreaux determined that after taxes, the past lost wages were $13,000 at the point when Wood began earning more working for his father-in-law than working as a diver. However, Dr. Wolfson testified that the after-tax figure was $29,778.
The trial court abused his discretion in failing to take into account the recurring working expenses for Wood’s past lost earnings. However, Dr. Wolfson did not take into account fringe benefits, like meals, that Wood would have received 11 awhile working as a diver. We cannot find that the trial court erred in considering Dr. Wolfson’s figure for after-taxes past lost earnings of $29,778; however, we would deduct $5,000 for recurring business expenses. Consequently, the damage award is amended to award plaintiff $24,778 for past lost wages.

Future Earning Capacity

In Jenkins, supra, the appellate court referred to Folse v. Fakouri, supra, in which the Supreme Court stated:
Earning capacity in itself is not necessarily determined by actual loss; Damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even thought he never profited from it monetarily.
Jenkins, supra, 613 So.2d at 1105.
Wood was not employed as a diver but as a diver tender at SubSea. Wood graduated from diver school in 1992, and he was on his way to becoming a diver. He had been promoted from a tender and was a diver tender at the time of the accident. His injury precluded his career as a diver where his salary would have been greater. He would have been a commercial diver classified in three upgrades.
Terrance E. Overland, qualified as an expert in the field of commercial diving operations and equipment. He testified that beginning in 1974 he actively was a commercial diver until 1983. Then he became a safety officer and explained that other divers became supervisors, operations managers, and workers with other diver-related jobs. Dr. Boudreaux, Sub-Sea’s economic expert, explained that after he was a commercial diver, he was a dive-related consultant in the oil field. He noted that all diver supervisors are ex-divers.
Wood related that he moved south to be a diver, and he really wanted to be a ludiver. Wood testified that he now has a job working for his father-in-law for a chain of convenience stores. Wood travels 500-700 miles a week and checks on the different stores. The driving hurts his back. He drove 800 miles in two days a week before trial, and he could not move for three days. When asked if he liked working for his father-in-law, Wood replied:
Sometimes, I mean — it is a hard job to have to work for family. And you know, I come home just mad, just hating my job at times, hating her family at times, so you know, I’m going to say, no, I don’t like my job all the time. I don’t like working for him all the time.
Wood also stated that he did not see any alternatives available to him at that time.
*572 Wood was deprived of working in the capacity of a diver which was a capacity he would have been entitled to enjoy even if he never profited from it monetarily. The trial court was not clearly erroneous in relying on Dr. Wolfson’s estimate that the plaintiff could have worked in the diving field for 14 years. Wood could have been a commercial diver, diver supervisor or employed in the commercial diving field.
Dr. Wolfson testified that taking no discount or incremental factors with raises, plaintiff would be making $30,012 at the time of trial, assuming $9 per hour for diver’s pay. He concluded that the net value after taxes was $217,000. Although Dr. Wolfson did not take into account the diver’s employee expenses, he used the $9 per hour which was the pay for the lowest paid diver. Plaintiff more probably than not could have advanced to the middle-rate diver who was paid $10 per hour; and then to the top-rated diver with $11 per hour in pay. Plaintiff more probably than not could have been paid more as a supervisor or other diver-related employee thereafter. Moreover, there was a proffer of Dr. Wolf-son’s estimate of the amount accounting for plaintiffs meals that were part of the fringe benefits that he would receive while working in the diving field. Dr. Wolfson did provide an estimate of $392,567 after hstaxes if plaintiff worked for 14 years at $11 per hour. Although Dr. Wolfson made no adjustment for employee expenses, the trial court did not abuse its vast discretion in selecting Dr. Wolfson’s lower figure of $217,000 after taxes based on $9 per hour for 14 years where fringe benefits and the probability of higher per hour wages would offset the job-related expenses.
Accordingly, the damage award is amended to award plaintiff $24,778 for past lost wages. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.