# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-862

**THOMAS LOVEJOY**

**VERSUS**

**HARDIE BERGEAUX AND CRAIN BROTHERS, INC.**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-3295
HONORABLE PATRICIA MINALDI, DISTRICT COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***
**ULYSSES GENE THIBODEAUX**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Oswald A. Decuir, and Jimmie C. Peters, Judges.

**REVERSED AND REMANDED FOR TRIAL ON THE MERITS.**

**Glenn W. Alexander**
**Jones & Alexander**
**122 Smith Circle**
**Post Office Drawer 250**
**Cameron, LA 70631**
**Telephone: (337) 775-8121**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Thomas Lovejoy**

**Hal James Broussard**
**Ped C. Kay III**
**J. Daniel Rayburn, Jr.**
**Broussard & Kay**
**P. O. Drawer 3308**
**Lafayette, LA 70502**
**Telephone: (337) 232-1666**
**COUNSEL FOR:**
    **Defendants/Appellees - Crain Brothers, Inc. and Hardie Bergeaux**
**Thomas E. Townsley**

**711 Pujo Street**
**Lake Charles, LA 70601**
**Telephone: (337) 430-0994**
**COUNSEL FOR:**
      **Plaintiff/Appellant - Thomas Lovejoy**

THIBODEAUX, Judge.

In this maritime case, the defendant-appellee, Crain Brothers, Inc. (Crain Brothers), filed a motion for summary judgment and asserted that the plaintiff-appellant, Thomas Lovejoy (Mr. Lovejoy), was not a seaman and should be precluded from bringing a claim under the Jones Act. The trial court granted the defendant's motion for summary judgment after concluding that there were no genuine issues of material fact as to the plaintiff's status as a seaman. We disagree. We reverse and remand to the trial court for a trial on the merits.

## I.

## ISSUES

We shall address:

1)    whether post-accident employment activities are relevant in determining seaman status; and,

2)    whether the trial court erred in granting a summary judgment to the employer defendant and in dismissing plaintiff's claims under the Jones Act.

## II.

## FACTS

In March 2000, Crain Brothers started its Sunland project, which involved placing pipeline crossings under the intracoastal waterway, the Sabine River, and the Vinton Canal. In June 2000, Crain Brothers hired Mr. Lovejoy to perform welding services on this project. Mr. Lovejoy was required to pass a welding exam in June but did not start work on the project until July 5, 2000. Mr. Lovejoy worked with Crain Brothers on a previous project in 1995 as a welder on an offshore platform.

The Sunland project involved use of many types of boats including tugs, marshbuggies, and aluminum flatboats. The M/V MISS HILDA transported the

1

workers, welding machines, sandblasting equipment, welding leads, and all other equipment needed to complete the project down the intracoastal waterway to the crossing site on a daily basis. The duration of the trip was anywhere between 30-45 minutes. Once at the site, the workers would pull the vessel up close to the bank and a marshbuggy machine, equipped with pontoons, would be used to offload the equipment onto another pontoon barge.

The waterway crossing construction consisted of welding the pipe together, one joint at a time. After welding, the workers moved the pipes along an assembly line where they were x-rayed, sandblasted, doped and jeeped. As each joint was completed, the string of welded pipe was pulled out into the marsh by a marshbuggy, far enough for another joint of pipe to be welded into the line. The final step was to weld a cap on it, pressure test it, and then install a pull cap on the end nearest the canal so that the line could be pulled through a hole that was bored underneath the waterway.

On July 8, 2000, Mr. Lovejoy was injured when a co-employee dropped a bucket on his head. The injury occurred on a levee, when the pipelines were being welded together. Though injured, he was released from the hospital and went back to his job a few days later. He continued to work on the project performing various tasks such as driving boats, transporting equipment, and fabrication welding until July 29, 2000. During his entire employment on this project, Mr. Lovejoy worked on the M/V MISS HILDA, the tugs, barges, marshbuggies and aluminum flatboats. He estimated that he piloted the M/V MISS HILDA to the job site about seven times during his work on the project and stayed on it all day long on some days.

2

Mr. Lovejoy filed suit against Crain Brothers and his co-worker, Hardie Bergeaux[1] under various theories including Jones Act, maintenance and cure, and unseaworthiness. He later amended his lawsuit to assert a claim against Zurich American Insurance Company. Crain Brothers filed a motion for summary judgment on the issue of seaman status. The trial court granted Crain Brothers' motion for summary judgment ruling that there were no genuine issues of material fact. Thereafter, this appeal was filed.

III.

## LAW AND DISCUSSION

### Standard of Review

"Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Reynolds v. Select Properties, Ltd.*, 93-1480, p. 2 (La. 4/11/94), 634 So.2d 1180, 1183; *Leger v. La. Med. Mut. Ins. Co.*, 98-1098, p. 4 (La.App. 3 Cir. 3/31/99), 732 So.2d 654, 657, *writ denied*, 99-1253 (La. 6/18/99), 745 So.2d 30. Stated differently, this court "asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law." *Labbe v. Chem. Waste Mgmt., Inc.*, 00-1772, p. 4-5 (La.App. 3 Cir. 5/2/01), 786 So.2d 868, 872, *writ denied*, 01-1602 (La. 9/14/01), 796 So.2d 685 (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 26 (La. 7/5/94), 639 So.2d 730, 750).

---

[1]Hardie Bergeaux filed an exception of no cause and/or no right of action and the exception was granted. No appeal was taken by Mr. Lovejoy.

Because this is a summary judgment case to which La.Code Civ.P. art. 966 *et seq.* is applicable, it is necessary to first determine who will bear the burden of proof at trial. Subpart (C)(2) of La.Code Civ.P. art. 966 explains:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The Jones Act, 46 U.S.C.App. § 688(a), mandates that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law . . . ." While the Act affords an injured seaman the right to maintain an action, it is silent as to the definition of "seaman." The Act "therefore leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protection." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355, 115 S.Ct. 2172, 2183 (1995).

In keeping with the jurisprudential development of admiralty law, Mr. Lovejoy has the burden of proving the elements of a twofold, conjunctive test for seaman status. "First, . . . 'an employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission."' . . . Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190 (citation omitted); *Roberts v. Cardinal Services.*, 266 F.3d 368, 374 (5th Cir. 2001), *cert. denied*, 535 U.S. 954, 122 S.Ct. 1357 (2002).

4

Because Crain Brothers is the movant and it is not to bear the burden of proof at trial on seaman status under the Jones Act, it is not required to negate all essential elements of Mr. Lovejoy's claims. The company must show an absence of factual support for one or more elements essential to Mr. Lovejoy's claims. If Crain Brothers is able to do this, then the burden of production shifts to Mr. Lovejoy to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If Mr. Lovejoy successfully produces such support, then there is a genuine issue of material fact.

In a Jones Act case, the determination of seaman status is a mixed question of law and fact. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535 (1997). If reasonable persons could reach only one conclusion as to a particular factual issue, then such issue is not genuine and may be disposed of summarily. However, if reasonable persons could disagree as to a factual issue's resolution, then such an issue is genuine, and trial on the merits is warranted. *Sumner v. Sumner*, 95-677 (La.App. 3 Cir. 11/8/95), 664 So.2d 718, *writ denied*, 95-2919 (La. 2/9/96), 667 So.2d 531.

**Mr. Lovejoy's Seaman Status Under the Jones Act**

As noted above, the test for seaman status is twofold and conjunctive. "First, . . . 'an employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission."' . . . Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190 (citation omitted). *See also Harbor Tug*, 520 U.S. at 554, 117 S.Ct. at 1540; *Roberts*, 266 F.3d at 374. Each prong must be considered in turn.

The first prong of this fact-intensive test is a broad threshold inquiry. Typically, it is easily satisfied, and a maritime employee who does the ship's work falls within the purview of the Jones Act. Indeed, "[a]ll who work at sea in the service of a ship" are potential seamen. *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354, 111 S.Ct. 807, 817 (1991)). *See also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999). It is neither necessary for the maritime worker to aid in navigation nor to participate in actual transportation of the vessel in order to satisfy the first prong. *Little v. Amoco Prod. Co.*, 98-1130 (La.App. 1 Cir. 5/14/99), 734 So.2d 933, *writ denied*, 99-1752 (La. 10/1/99), 748 So.2d 446; *Wilander*, 498 U.S. 337, 111 S.Ct. 807. Mr. Lovejoy was employed by Crain Brothers as a welder. His duties included loading equipment for the project onto the vessel. In addition, he piloted the vessel after his injury. Thus, given the broad interpretation of the first prong of the *Chandris* test, it is likely that a jury could find Mr. Lovejoy contributed to the function of the vessel or to the accomplishment of its mission, which was to transport the workers and equipment to the welding site.

The second or "substantial connection" prong of the test is often the determinative one. It consists of both temporal and functional elements, which is to say that the focus is on the substantiality of the connection to a vessel or identifiable group of vessels. The connection must be substantial in terms of both duration and nature. The Supreme Court in *Chandris* stated that "[a] maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land-based and therefore not a member of the vessel's crew, regardless of what his duties are." *Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191. The Court went on to state:

> A worker who spends less than about 30 percent of his time
> in the service of a vessel in navigation should not qualify as
> a seaman under the Jones Act. This figure of course serves

as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. . . . And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.

*Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191.

There are genuine issues of material fact regarding whether the "substantial connection" prong of the *Chandris* test is satisfied. Before his injury, Mr. Lovejoy rode the vessel to work on a daily basis; however, most of his welding duties were performed on a levee. After his accident, Mr. Lovejoy spent a substantial part of his time on the M/V MISS HILDA and other boats and performed additional tasks such as piloting the M/V MISS HILDA.

The first criterion involves a consideration of the time spent by Mr. Lovejoy on a vessel in navigation. Crain Brothers argues that Mr. Lovejoy only rode a vessel on water on the way to the actual job site and spent less than 30% of his time on water. Crain Brothers estimates that he spent 37 hours on a vessel, out of 245 hours worked. On the other hand, Mr. Lovejoy estimates that he spent at least 43% of his time on a vessel. His figure shows that he spent 82.7 hours of approximately 192 hours worked on a vessel.

Another issue is whether the area in which Mr. Lovejoy performed his work was a navigable body of water. Crain Brothers argues that the marsh where Mr. Lovejoy worked was not a navigable body of water. Mr. Lovejoy counters that the project involved marsh machines and that the welding machines and equipment were on barges which were pushed by tugboats, thus making the area a navigable body of water.

In its opinion, the trial court stated:

The plaintiff contends that this Court should examine the duties to which he was assigned after his injury and that the Court should not rely on a "snapshot" of what job the plaintiff was performing at the exact time of his injury. All existing cases acknowledge that activities <u>up to</u> and including the time of injury should be included in the examination. The plaintiff's attempt to stretch this rationale to include his activities after his injury requires a leap of logic which would subvert the purpose of the Jones Act. This would allow someone who had no connection with Jones Act activities who was injured on the job to retroactively claim Jones Act status if he were assigned to a seaman's duties after his injury. Such an analysis would lead to absurd results unintended by the Jones Act and general maritime law.

Mr. Lovejoy suggests, and we agree, that the trial judge neglected to consider the claimant's time after his injury in determining seaman status. "[S]eaman-status is determined by the employee's *entire* employment-related connection to a vessel, [or fleet of vessels] and not by the immediate circumstances or location of the plaintiff's injury." *Hufnagel*, 182 F.3d at 346. (Emphasis supplied). *See also Chandris*, 515 U.S. at 363, 115 S.Ct. at 2187. The *Chandris* court stated that "courts should not employ 'a "snapshot" test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence.'" *Chandris*, 515 U.S. at 363, 115 S.Ct. at 2187. Although the court in *Chandris* did not specifically state that post- accident activities can be included in determinating seaman status, we can infer this from the facts of the case. In *Chandris*, the employee was injured and returned to work on the vessel. The court considered the time the employee spent on the ship after the accident, while the vessel was in drydock, in determining that the employee was a seaman.

*Chandris* also addresses the issue of retroactive determination of seaman status by providing an exception to the general rule that an employee's entire employment should be considered in determining seaman status. *Chandris* provides:

8

When a maritime worker's basic assignment changes, his seaman status may change as well . . . For example, we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of the vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position . . . While our approach maintains the status-based inquiry this Court's earlier cases contemplate, we recognize that seaman status also should not be some immutable characteristic that maritime workers who spend only a portion of their time at sea can never attain.

*Chandris*, 515 U.S. at 372, 115 S.Ct. at 2190.

Based on the totality of the circumstances of Mr. Lovejoy's employment, including his time spent on the vessel after his injury, we do not find this to be a case where "undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, [where] the court may take the question from the jury by granting summary judgment or a directed verdict." *Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191. When the facts are analyzed against the backdrop of the jurisprudence, we believe that a reasonable jury could conclude that Mr. Lovejoy spent more than 30 percent of his employment time aboard vessels owned or controlled by Crain Brothers. Consequently, seaman status remains a genuine issue of material fact in this case.

IV.

## **CONCLUSION**

For the reasons assigned, the trial court judgment appealed from is reversed and set aside insofar as it grants summary judgment declaring no genuine issue of material fact as to Mr. Lovejoy's seaman status as contemplated by the Jones Act and the jurisprudence interpreting said Act.

**REVERSED AND REMANDED FOR TRIAL ON THE MERITS.**