ARMSTRONG, Chief Judge.
The plaintiff-appellant, Robert Mclnnis, appeals a judgment of May 28, 2004, dismissing with prejudice his claim against the defendant-appellee, Parker Drilling Company, based upon a finding that the plaintiff failed to prove seaman’s status. We affirm.
Plaintiff originally filed a Jones Act and general maritime law claim in the Civil District Court for the Parish of Orleans, but the defendant had the case removed to federal court alleging that the plaintiff had fraudulently pled a Jones Act claim to avoid removal to federal court.
On March 21, 2002, the federal district court remanded the case back to the Civil District Court finding that there was a question of fact as to whether the plaintiff was a Jones Act seaman.
By agreement of the parties, the Civil District Court tried the case without a jury-
Plaintiff alleges that he sustained a severe injury to his lower back and cervical area aboard Platform Rig-3 on April 23, 2001, while in the course and scope of his employment with the defendant-appellee, Parker Drilling Company. The defendant does not dispute this. The plaintiff alleges that he was employed by Lthe defendant as a seaman at the time of his employment injury, thereby entitling him to recover under the Jones Act. The defendant contends that the plaintiff was not a seaman and would limit him to compensation under the Louisiana Longshoremen and Harbor Workers Act.
1. It is undisputed that the plaintiff was injured while working on Platform Rig-3 at the time of his injury. It is undisputed that Platform Rig-3 is considered to be a land based rig.
2. It is uncontested that jack-up Rig-11 is considered to be a vessel in contrast to Platform Rig-3.
3. It is undisputed that if the only work done by plaintiff for the defendant was the work he was doing on Platform Rig-3 he would not be considered to be a seaman, i.e., he would not be entitled to relief under the Jones Act.
4. The defendant does not dispute that a vessel owner may be liable for a seaman’s shore based injuries. The Jones Act says nothing about the place where the injury occurs. Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 453 (5 Cir.1980). Therefore, once it is established that a worker is a seaman, the Jones Act permits him to recover from his employer even for injuries received while he is on shore. Id.
5. The defendant does not dispute that an employee may retain his seaman’s status if his assignment to shore based work is only temporary.
6. The plaintiff does not dispute the fact that an employee loses his seaman’s status if he is permanently reassigned to shore based work.
The plaintiff notes that he worked for the defendant aboard jack-up' Rig 11 from January 1, 2000, until he was transferred *1155 to Platform Rig-3 on November 11, 2000, where he continued to work until he was injured on April 23, 2001. While the parties spend a great deal of time arguing over how long the plaintiff was employed by the defendant and what percentage of that time was spent aboard rigs that qualified as vessels versus time spent on rigs that did not qualify as vessels, this appeal really boils down to a question of whether plaintiffs transfer to Platform Rig-3 was temporary or permanent. It is undisputed that if the plaintiffs transfer to Platform Rig-3 were permanent, then the plaintiff forfeited whatever seaman’s status he previously had enjoyed prior to the transfer to platform Rig 3-P, and this appeal can be decided on that basis alone.
The defendant employed Platform Rig-3 to do work for the Anadarko company. The plaintiff testified that his “toolpusher” aboard Platform Rig-3 told him that he could return to jack-up Rig-11 or another jack-up rig after the Anadarko was complete. The Anadarko job was completed in February of 2001 at which time Platform Rig-3 was returned to the defendant’s land based yard in New Iberia. Contrary to his wishes, plaintiff admitted that he remained assigned to Platform Rig-3. He wanted to return to jack-up Rig-11 because he preferred the living conditions and work schedule there to that of Platform Rig-3, but his toolpusher did not have the authority to transfer him back to jack-up Rig-11. After the Anadarko job, the defendant entered into a contract with Stone Energy and in March of 2001, Platform Rig-3 was skidded aboard another fixed platform owned and operated by Stone Energy. The plaintiff admitted that the duration of the jobs performed by Platform Rig-3 was uncertain because of unpredictable delays that are an accepted part of the offshore drilling business. Because of the uncertain duration of the Platform Rig-3 job assignments, the defendant argues that the plaintiffs assignment to Platform Rig-3 was for an “indefinite period,” which, by definition, means that was “permanent.” Garner v. Pool Company of Texas, 595 So.2d 751 (La.App. 4 Cir.1992); Smith v. Nicklos Drilling Company, 841 F.2d 598 (5th Cir.1988).
The plaintiff argues that none of the job assignments given by the defendant to its employees were permanent and that any employee was subject to reassignment at any time. However, we find that the word “permanent” is a term of art with a different meaning in this context as explained by Garner and Nicklos Drilling Company, supra.
In Garner this Court held that where the plaintiffs transfer to a fixed platform rig represented a permanent reassignment as opposed to a temporary job reassignment, the plaintiff could not be considered to be a seaman. In Garner, the plaintiff worked on floating rigs for some period of time until he transferred to a fixed platform approximately six weeks prior to his injury. This Court noted that a transfer is considered to be permanent when it is for an indefinite period of time, and that the totality of prior seaman’s status becomes irrelevant when there has been a permanent land-based reassignment:
Plaintiffs primary contention at trial was that he qualified as a seaman because the majority of his time at Pool Company had been spent working aboard floating barge rigs, which are considered vessels. However, in Barrett v. Chevron U.S.A. Inc., supra, [781 F.2d 1067] at 1075-76[ (5th Cir.1986)], the court noted that in determining the sub-stantiality of plaintiffs work aboard vessels, the court normally looks to the entire 1 ^period of plaintiffs employment, except in cases where plaintiff has been permanently reassigned. Then it *1156 is appropriate to consider only plaintiffs work following the reassignment. Accord: McFarland v. Justiss Oil Co., Inc., 526 So.2d 1206, 1211-12 (La.App. 3d Cir.1988). [Emphasis added.]
In Smith v. Nicklos Drilling Co., [841 F.2d 598 (5th Cir.1988)], a case with facts similar to the instant one, the plaintiff had worked for several years aboard his employer’s floating barge rig. When that rig was retired from service, plaintiff was reassigned to a land rig. Three weeks later, plaintiff was injured on the land rig. Relying on Barrett, the court concluded that the plaintiff in Smith was not a seaman at the time his claim arose because his assignment to the land rig was permanent, which meant, “for an indefinite period.” Smith, supra, at 599-600. [Emphasis added.]
Id., 595 So.2d at 753.
In Smith v. Nicklos Drilling Company, 841 F.2d 598 (5th Cir.1988), where a seaman was reassigned from a floating barge rig to a land rig he was found to have lost his seaman’s status when he was injured only three weeks after being transferred because the transfer was considered to be permanent. The floating rig on which he had previously worked was shut down. The court explained that:
His assignment to land was permanent — which, as in determination of residence, means no more than “for an indefinite period [1]’ — not temporary. Nothing in life, alas, is permanent. [Emphasis original.]
Id., at 600. The opinion also points out that the jurisprudence that discusses the weighing of how much time the would-be seaman spends with the vessel versus the time away from it in determining seaman status “pertains to assaying a ^regular assignment ... and has no application where new[2] assignments are concerned.” Id. at 599.
Lovejoy v. Bergeaux 03-862, p. 9 (La.App. 3 Cir. 12/10/03), 862 So.2d 490, 495-496, explains that when an employee has been given a new job assignment, as occurred in the instant case when the plaintiff was transferred to Platform Rig-3, in which his essential duties have changed, the Supreme Court decision in Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) calls for an exception to the general rule that an employee’s entire employment should be considered in determining seaman status:
Chandris also addresses the issue of retroactive determination of seaman status by providing an exception to the general rule that an employee’s entire employment should be considered in determining seaman status. Chandris provides:
When a maritime worker’s basic assignment changes, his seaman status may change as well ... For example, we can imagine situations in which someone who had worked for years in an employer’s shore side headquarters is then reassigned to a ship in a classic seaman’s job that involves a regular and continuous, rather than intermittent, commitment of the worker’s labor to the function of the vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company’s office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a mari *1157 time employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position ... While our approach maintains the status-based inquiry this Court’s earlier cases contemplate, we recognize that seaman status also should not be some immutable characteristic that maritime workers who spend only a portion of their time at sea can never attain.
Chandris, 515 U.S. at 372, 115 S.Ct. at 2190.
Lovejoy, 03-862, p. 9, 862 So.2d at 495-496. While the Chandris court was concerned with a non-seaman whose new work assignment was maritime in nature, logic dictates that the same rule must apply to the seaman whose new work assignment is non-maritime in nature, e.g., Mr. McInnis’ transfer from seaman’s duties on jack-up Rigg 11 to land-based duties on Platform Rig-3 in the instant case.
The Jones Act does not require that the seaman’s tasks at the time he is injured be related to service on the ship. Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 453 (5th Cir.1980). A seaman does not lose his status when he is temporarily assigned by his employer to duties off the vessel. Id. However, this does not mean that the Jones Act extends to all injuries ashore. Id. This means that the employee must be a seaman at the time his claim arises; the fact that he was once a seaman and that either he or his employer intend some day for him again to become one does not suffice to tint with blue water status all the events that happen in between, however remote in time and place from a vessel past or a vessel future. Id.
The Guidry court then discussed the implications of the Higginbotham v. Mobil Oil Corporation, 545 F.2d 422 (5th Cir.1977) decision in which a-seaipan assigned to work on a fixed platform as a temporary replacement for a vacationing foreman remained a seaman while in a helicopter that crashed while ferrying workers form the platform to shore. Guidry distinguished Higginbotham as follows:
However, Higginbotham does not imply that a maritime worker assigned to work ashore for a-very long period of time would continue indefinitely to be a seaman merely because it is contemplated that he will some day return to the vessel...
Guidry, at 453. Additionally, the Guidry court suggested certain criteria for determining how long a seaman continues after a shoreside assignment:
[H]ow long a seaman’s status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer’s business, whether the employee was free to accept or reject it without endangering his.employment status and any other factors relevant to the- ultimate inquiry; at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was he at that time no longer a seaman whatever his past relationship or his future prospects? [Emphasis added.]

Id.

In Burgess v. C.F. Bean Corporation, 98-3072, pp. 11-12 (La.App. 4 Cir. 8/18/99), 743 So.2d 251, 259, this Court also quoted with approval that portion of Chandris indicating that when an employee receives a new work assignment in which his essential duties are changed the court should look to the substantiality of his vessel-related work on the basis, of his activities in his new position.
*1158 The plaintiffs toolpusher, Mr. Joe Rutland, testified that the transfer form dated November 11, 2000, transferring the plaintiff from the jack-up rig to Platform Rig-3 did not indicate whether the transfer was permanent or temporary. Mr. Rutland explained that the transfer was “permanent until he was transferred to another rig.” Mr. Rutland also acknowledged that the defendant trained its employees to work both jack-up rigs and platform rigs and transferred them back and forth as needed. The plaintiff refers to other evidence in support of this fact, but it is a fact that the defendant does not dispute. Because the plaintiff worked on both platform rigs and jack-up rigs while in the employ of the defendant, the | nplaintiff contends that he was never permanently assigned to any specific type of rig. Therefore, his transfer to Platform Rig-3 must be considered temporary.
We disagree. Mr. Rutland’s testimony when viewed in its entirety shows that he considered the plaintiffs transfer to Platform Rig-3 to be permanent. This testimony is supported by that of Mr. Men Hebert, a former resources manager for the defendant. The trial court in its reasons for judgment relied on the testimony of these two men in reaching its finding that the plaintiffs reassignment was permanent. This is a credibility call that the trial court is entitled to make, and one in which this Court can find no manifest error after reviewing the record as a whole.
In light of the jurisprudence considered above, the fact that the plaintiff may have been a seaman in the past and might have the prospect of becoming one again in the future does not mean that his assignment to Platform Rig-3 was temporary instead of permanent as those terms are understood in the jurisprudence. The aforementioned cases indicate that it is to these new duties that we should look in determining the plaintiffs seaman’s status. It is undisputed in the instant case that all of the plaintiff duties in his new work assignment to Platform Rig-3 were non-vessel-related. Coupling this undisputed fact with the trial court’s finding (which this Court may not overturn in the absence of manifest error) that the plaintiffs reassignment to Platform Rig-3 was permanent, compels the conclusion that the plaintiff was not a seaman at the time of his injury regardless of whether he may have qualified as such immediately prior thereto.
The parties cite a number of other cases worthy of comment, including a number in which the reassignment to new job duties was found to be only temporary, but those cases may be distinguished as follows:
In Savoie v. Otto Candies, Inc., 692 F.2d 363 (5th Cir.1982), the court held that a deckhand’s assignment to clean duck blinds was temporary and that, accordingly, he retained his seaman status. He received the assignment to clean duck blinds on October 27, 1979, and was injured on the same day after working on his new assignment for only an hour. The Savoie court also noted that only a week before the plaintiff was working aboard a vessel as a deckhand. In contrast, in the instant case the plaintiff had been working on Platform Rig-3 for several months at the time of his injury with no definite prospect of reassignment to seaman’s duties in sight.
Seymour v. Transocean Marine, Inc., 421 So.2d, 325, 328 (La.App. 1 Cir.1982), is another case standing for the proposition that when a seaman’s reassignment to land-based duties is only temporary he does not thereby lose his seaman’s status.
There is, however, a line of cases specifically dealing with individuals who, while employed as seamen, were temporarily reassigned to shore work for various reasons, but nonetheless retained them *1159 status as seamen. The court has upheld seaman status as to an individual who was employed as a seaman, but was injured while temporarily assigned to a newly constructed dredge being prepared for use by his employer. Crafton v. Tennessee Valley Sand & Gravel Company, 408 F.2d 1096 (5th Cir.1969), writ denied, 396 U.S. 827, 90 S.Ct. 73, 24 L.Ed.2d 78 (1969), and in a case which involved a worker normally assigned to a submersible drilling barge, the court held that despite temporary reassignment to a fixed platform to replace a vacationing foreman, the worker retained Jones Act status. Higginbotham v. Mobil Oil Corporation, 545 F.2d 422 (5th Cir.1977), reversed on other grounds, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).
In this instance, there is no question that Seymour was originally hired by and worked for Transocean as a seaman as defined by the Jones Act. Appellant argues that as a result of Seymour’s injury on board the motor | ^vessel and his temporary reassignment to shore work, Seymour lost his status as a Jones Act seaman. However, at the time of the second injury Seymour was still employed by Transocean, he had been away from the vessel to which he was customarily assigned for a period of only ten days, and he was expected to resume his duties as deckhand aboard the vessel as soon as he was physically able. Following the reasoning of the above cited cases, we find that nothing which occurred subsequent to Seymour’s employment by Transocean served to change his status from that of seaman. [Emphasis added.]
Seymour, at p. 328.
Thus, in Seymour the court found that because the plaintiff had been away from the vessel to which he was customarily assigned for a period of only ten days, and then only because his absence was forced as the result of an injury, and he was expected to resume his duties as a deckhand aboard the vessel as soon as he was physically able to do so, that he had not forfeited his seaman’s status. These facts in Seymour are far removed from those of the instant case where the plaintiff was away from his vessel for over five months with no objective expectation of returning to maritime duties in the foreseeable future.
In Smith v. Odom Offshore Surveys, Inc., 791 F.2d 411 (5th Cir.1986) the court held that the plaintiff did not lose his seaman’s status as a result of what the court characterized as an undisputed temporary assignment to a shore control party. The court noted that the plaintiff had been pursuing that assignment for only four days at the time he was injured and that he was expected to complete the assignment in only a few more days at which time his vessels would be outfitted. The court also noted that the land based assignment was directly related to his employer’s business, as well as to his employment as a hydrographic surveyor, because the shore work had to be completed before surveying operations could hJoegin from the vessel. The court also sustained the district court’s finding that the plaintiff could not have refused the assignment if he wanted to assume his duties as a hydro-graphic party chief aboard the vessel. In short, the plaintiff prevailed based on a fact finding that his land-based assignment was temporary. The plaintiff had worked for several years in a seaman’s capacity for the same employer prior to the time he was temporarily reassigned to do land based work. Thus, there is nothing in Odom to suggest that there was error in the trial court finding in the instant case that the plaintiffs reassignment to land based work was permanent.
*1160 In Wilkerson v. Teledyne Movible Offshore, Inc., 496 F.Supp. 1279 (E.D. Texas 1980), the plaintiff was assigned to a fixed drilling platform when the regular operator was called away on an emergency and was injured an hour after arriving on the platform. The court noted that the plaintiffs duties were understood by all parties to be temporary. The court held that the plaintiff did not lose his seaman’s status by virtue of this temporary reassignment. Again, these facts are far removed from those of the instant case. The temporary nature of the reassignment to land based duties in Wilkerson was apparently uncontested, i.e., the defendant did not even attempt to argue that the reassignment was permanent. Moreover, in Wilkerson the plaintiffs injury occurred before he had been on his new assignment for even one full day.
Beneficial Louisiana, Inc. v. Wilson, 03-0981 (La.App. 4 Cir. 12/3/03), 862 So.2d 1049, is inapposite. The question before this Court in that case was not whether a reassignment was permanent, but whether the fact that a maritime worker performed some of his duties on land caused him to forfeit his seaman’s status. Therefore, Beneficial Louisiana sheds no light on the key question of whether the plaintiff in the instant case was permanently reassigned to land based duties.
In Wood v. SubSea International, Inc. (La.App. 4 Cir. 3/29/00), 766 So.2d 563, the question was not whether the plaintiff had been permanently reassigned . to land based duties, but whether his duties as a marine diver attached to a fixed platform was covered by the Jones Act due to the nature of his duties as a whole. Thus, Wood provides no guidance on the question of whether the plaintiffs assignment in the instant case to Platform Rig-3 was temporary or permanent.
As this Court has found no basis in the record or in the law upon which to overturn the trial court’s finding that the plaintiffs transfer to Platform Rig-3 was permanent; and as that finding alone is dispositive of the plaintiffs claim this Court need not reach the plaintiffs remaining assignments of error.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. Emphasis added.

. Emphasis original.