873 So.2d 718 (2004)
Dave P. FOLSE, Jr.
v.
GULF TRAN, INC.
No. 2003 CA 0758.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*720 Steven M. Speigel, Leo M. Prange, III, New Orleans, Counsel for Plaintiff/Appellee Dave P. Folse, Jr.
Fred E. Salley, Covington, Counsel for Defendant/Appellant Gulf Tran, Inc.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
McCLENDON, J.
In this action brought pursuant to the Jones Act, 46 U.S.C.App. § 688 et seq., and general maritime law, issues of liability and attorney's fees are raised on appeal. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
David P. Folse, Jr. was employed by Seahorse Marine as a captain aboard the M/V Mr. Walter. In 1997, Seahorse Marine sold the M/V Mr. Walter and several other boats to Gulf Tran, Inc. Some crew members of those vessels, including Folse, became employees of Gulf Tran at that time. Subsequently, in November of 1997, Gulf Tran assigned Folse to the M/V Mr. Walter.
In December of 1997, Folse advised Gulf Tran that he was injured while working on the M/V Mr. Walter and was suffering from an infected "blister" on his right foot as a result of those injuries. Gulf Tran began paying Folse maintenance and cure at that time. On January 26, 1998, after further investigation, Gulf Tran discontinued those benefits.
*721 On November 15, 2000, Folse filed the instant action, seeking recovery under the Jones Act and general maritime law. Therein, he alleged that in November of 1997, another employee, Captain Teodro Huerta, stepped on his foot, causing a diabetic ulcer to develop. Folse also alleged that, subsequently, Captain William Gant, while intoxicated, forced Folse to get off the M/V Mr. Walter at an abandoned dock after nightfall. At the dock and while walking to a nearby road, Folse was exposed to muddy waters that allegedly caused the diabetic ulcer to become extremely infected. Folse asserted that this injury caused him to suffer serious and debilitating personal injuries, including physical pain and suffering, loss of enjoyment of life, mental and emotional distress, and loss of wages. Folse sought to recover damages, maintenance and cure, and attorney's fees.
After hearing the matter, the trial court rendered judgment in favor of Folse and against Gulf Tran, awarding Folse maintenance and cure in the sum of $14,900.67. The court further found that Gulf Tran was negligent and awarded Folse $15,000.00 in damages, but reduced that sum by 50% upon a finding that Folse was 50% at fault in causing his injuries. Gulf Tran appeals that judgment, contending the trial court erred in finding it liable for Folse's injuries. Folse answered the appeal, asserting the trial court erred in failing to award him attorney's fees under general maritime law.[1]

STANDARD OF REVIEW
Admiralty claims may be brought in federal court pursuant to its admiralty jurisdiction or in state court under the savings to suitors clause; in either case, federal substantive maritime law applies. Antill v. Pub. Grain Elevator of New Orleans, Inc., 577 So.2d 1039, 1040 (La.App. 4 Cir.), writ denied, 581 So.2d 684 (La.1991). However, factual findings made by the trial court in general maritime or Jones Act cases are reviewed under the manifestly wrong or clearly wrong standard of review used by the Louisiana appellate courts in reviewing factual findings of lower courts. Milstead v. Diamond M Offshore, Inc., 95-2446, p. 11 (La.7/1/96), 676 So.2d 89, 96.
Under the manifest error standard of review enunciated in Stobart v. State of Louisiana, Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993), in order to reverse a factual determination, an appellate court must find (1) a reasonable factual basis does not exist in the record for the finding and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the factfinder's conclusion is right or wrong, but whether the conclusion is a reasonable one. Nevertheless, although it must give great deference to the trier of fact, a reviewing court has a constitutional duty to review facts and reverse trial court judgments that are clearly wrong based on the evidence, or are clearly without evidentiary support. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though it is convinced that if it had been sitting as the trier of fact, it would have weighed the evidence differently. *722 Wood v. SubSea Int'l, Inc., 99-1320, p. 7 (La.App. 4 Cir. 3/29/00), 766 So.2d 563, 568, writ denied, XXXX-XXXX (La.6/16/00), 765 So.2d 336. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Virgil v. Am. Guarantee & Liab. Ins. Co., 507 So.2d 825, 826 (La.1987).

FORFEITURE OF MAINTENANCE AND CURE
Maintenance and cure is an obligation imposed upon a shipowner to provide the cost of medical treatment and basic living expenses to a seaman who becomes ill or injured during his service to the ship. Silmon v. Can Do II, Inc., 89 F.3d 240, 242 (5th Cir.1996). The obligation to pay maintenance and cure is not predicated on the fault or negligence of the shipowner. Aguilar v. Standard Oil of N.J., 318 U.S. 724, 730, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943). Furthermore, a seaman's right to maintenance and cure is subject to very few well-defined and very narrow exceptions. A seaman who intentionally misrepresents or conceals medical facts from an employer while applying for work will forfeit his right to seek maintenance and cure if the misrepresented or undisclosed facts are material to the employer's decision to hire him and if there is a causal connection between the withheld information and the injury which is eventually sustained. McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 549 (5th Cir. 1968), cert. denied, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968).
On appeal, Gulf Tran asserts that the trial court erred in failing to conclude that Folse forfeited his claim for maintenance and cure because he failed to disclose to his employer that he suffered from Type II Diabetes. Given the circumstances of this case, we disagree.
On September 18, 1997, Folse completed an application for employment with Gulf Tran, wherein the employer asked few questions concerning Folse's health. In his application for employment, Folse indicated, by choosing a pre-printed reply to a query, that he could perform the tasks of a captain "without accommodation." Additionally, the following question appeared on the application for employment: "The Rehabilitation Act of 1973 provides that all applicants and employees be offered the opportunity to identify themselves as handicapped. Do you consider yourself handicapped?" To that question, Folse replied, "No." The employer made no further inquiries on the application concerning Folse's health and did not inquire as to any preexisting medical conditions. However, in the application, Folse agreed to have any medical examinations desired by the employer and gave Gulf Tran access to his medical records. Gulf Tran did not require that Folse submit to examination by a physician before or after he began working for Gulf Tran and did not examine Folse's medical records.
Folse testified at trial that he believed his diabetic condition would not prevent or hinder him from performing his tasks as captain, that he needed no accommodation for his condition while performing his duties, and that he did not consider himself to be handicapped "due to his diabetes." Additionally, Folse had worked as a captain for his prior employer after he was diagnosed with Type II Diabetes and with the knowledge of that employer. Although Folse suffered from a diabetic lesion during that employment, there is no evidence in the record that his diabetes adversely impacted his prior employer or was of concern to his prior employer.
Considering this evidence, the record supports the factual conclusion that Folse did not intentionally misrepresent or conceal *723 his diabetes. Therefore, we find no manifest error on behalf of the trial court's determination that Folse did not forfeit his right to maintenance and cure. This assignment of error lacks merit.

CAUSATION
With respect to the liability of Gulf Tran, the trial court made the following findings of fact as expressed in its written reasons for judgment:
This Court finds that plaintiff, Dave Folse, Jr., was a "Jones Act seaman" as set forth in 46 U.S.C.App. § 688, at the time he was employed by defendant, Gulf Tran, Inc. on board the vessel M/V Mr. Walter. As previously noted, plaintiff suffered from a preexisting condition, namely Type II Diabetes. This Court finds that plaintiff did in fact have a diabetic lesion on his foot, however, based on the testimony of plaintiff as well as the testimony of Captain Huerta, the Court cannot find that this initial injury was caused as a result of any accident on board either the M/V Mr. Walter, or at any other time during his employ. This Court would note this preexisting condition became aggravated when, in November 1997, Captain William Gant, while in an intoxicated state, ordered plaintiff off of the boat at night placing him on [an] abandoned area of the dock of Port Fouchon. This dock was not the designated crew change point for the seaman assigned to the vessel. When plaintiff disembarked the vessel, he immediately found himself abandoned in a dock area that was secured by a fence. This forced him to traverse a muddy, marshy area in order to find an area of the fence that he could climb in order to gain access to a public roadway....
Plaintiff's foot became infected partly as a result of exposing the lesion in his foot to the muddy waters located in the area of the dock where he was abandoned which in part necessitated medical treatment. This Court would also note that according to the medical testimony of Dr. Steven [Morris] and Dr. Melvin Parnell, Mr. Folse was a less that compliant patient, indicating that due [to] his own shortcomings in his treatment of his Type II Diabetes, the infection became more serious.
Gulf Tran contends that the trial court erred in holding it liable for Folse's injuries. Specifically, Gulf Tran asserts that the trial court erred in concluding that an injury related to Folse's employment with Gulf Tran, rather than a preexisting diabetic condition, caused the diabetic ulcer to become infected. Gulf Tran further contends that the record is void of any medical evidence in support of a causal connection between Folse's allegations and the initiation or aggravation of infectious lesions precipitated by diabetes.
The evidence reflects that Folse worked on the M/V Mr. Walter as an employee of Gulf Tran from November 19, 1997 through November 29, 1997. During that period, he held the position of second captain and worked with two other employees of Gulf Tran, Captain William Gant and a deck hand. It is undisputed that Gant, while in an intoxicated state, ordered Folse off the vessel at an abandoned dock in Port Fouchon on the evening of November 29, 1997.
Folse testified that, after disembarking, he saw no telephone or any other means to call for assistance. No transportation was available to transport him from the dock. Therefore, Folse walked through calf-deep muddy water for approximately two hours before reaching a nearby road. Eventually, a passing truck transported Folse to his home. The next morning Folse telephoned Ross D. Bruce, the president and *724 general manager of Gulf Tran, and informed him that Gant had forced him off the vessel.
It is undisputed that Folse had a diabetic lesion on the bottom and outside of his right foot at the time he was forced off the M/V Mr. Walter. However, his employer was unaware that Folse suffered from Type II Diabetes, a condition diagnosed prior to Folse's employment with Gulf Tran, and was unaware of the fact that Folse had a diabetic ulcer on his right foot. When Folse reported the incident to Bruce on November 30, 1997, Folse did not tell Bruce that he suffered from diabetes, that he had a diabetic lesion on his right foot, or that the water had irritated the lesion.
Folse testified that he took proper care of the wound, yet it did not heal. On December 16, 1997, Folse went to the emergency room at St. Anne General Hospital for treatment of the lesion and was admitted to the hospital. Two days later, he was released. Folse continued treatment with Dr. Stephen B. Morris for several weeks after his release from the hospital. On December 30, 1997, Folse filed an accident report with his employer. Therein, he stated that at the end of November his "foot got stepped on and made a blister that got infected."
In January of 1998, Gulf Tran requested that Dr. Melvin Parnell, Jr., an infectious disease and orthopedic specialist, examine Folse. On January 26, 1998, Dr. Parnell examined Folse and immediately admitted him into East Jefferson General Hospital for treatment of the infection associated with the diabetic ulcer. Ultimately, the wound healed. On March 12, 1998, upon a finding that Folse had reached maximum medical improvement, Dr. Parnell released Folse to return to work.
The medical evidence reflects that the wound contained three types of bacteria. Dr. Parnell testified that each type of bacteria was very common and could be found "anywhere," including muddy water. He stated that it was reasonable to conclude that the muddy water caused the infection.
Dr. Morris also testified that all three types of bacteria are commonly found in muddy water. He opined that Folse could have picked up the various bacteria in the muddy water; however, the diabetes was the major factor in causing Folse's condition. Dr. Morris stated that Folse could return to work as a captain on a vessel once his foot healed.
The trial court made the factual determination that the preexisting lesion was aggravated by muddy water on November 29, 1997, because Gant forced Folse off the vessel. This conclusion is clearly supported by the testimony of the plaintiff, Dr. Morris and Dr. Parnell. Therefore, the factual determination that the muddy water resulted in the aggravation of the preexisting lesion is not manifestly erroneous. Stobart, 617 So.2d at 882.

ATTORNEY'S FEES
In his answer to the appeal, Folse contends that the trial court erred in denying his request for attorney's fees as Gulf Tran's refusal to pay maintenance and cure from January 26, 1998 through March 12, 1998 was arbitrary and capricious. We disagree.
An award of attorney's fees for the failure to pay maintenance and cure is appropriate only in the most egregious circumstances. A shipowner who acted reasonably in refusing to pay maintenance and cure is liable only for the amount of maintenance and cure he failed to pay. If the shipowner refused to pay without a reasonable defense, he is liable for the maintenance and cure he failed to pay and compensatory damages. If the owner *725 lacks a reasonable defense and has exhibited callousness and indifference to the seaman's plight, he is liable for attorney's fees as well. Thus, applying this escalating scale of liability, an award of attorney's fees is proper only if the employer has been found to have acted in a fashion that is callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent in refusing to pay maintenance and cure. Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir.1987).
In the instant case, Folse submitted his accident report to Gulf Tran more that one month after the alleged injuries occurred and complained only of an infected "blister." In the accident report, the description of the events allegedly resulting in Folse's injuries is very limited and unclear. At no time did Folse advise his employer that he suffered from a diabetic lesion, although the record reflects that he had been treated for the same condition in the past. It was not until Folse was examined by Dr. Parnell that Folse's preexisting condition was revealed to Gulf Tran. It is undisputed that diabetic lesions with the same bacterial infections as those present in Folse's wound are common and can result from many, very common causes or situations. Furthermore, Drs. Morris and Parnell testified that careful, meticulous care of a diabetic lesion is essential to recovery. Yet, the trial court found that Folse was a "less than compliant patient."
Under these circumstances, there clearly existed some question as to the cause of the infection when Gulf Tran stopped paying maintenance and cure to Folse. Therefore, we cannot say that the defendant's refusal to pay maintenance and cure was unreasonable or arbitrary and capricious. For these reasons, the trial court did not err in refusing to award attorney's fees to Folse.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed equally to Gulf Tran, Inc. and Dave P. Folse, Jr.
AFFIRMED.
NOTES
[1] In his answer to the appeal, Folse alleged additional errors on behalf of the trial court. However, these additional assignments of error were not briefed and are considered abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4; Canizaro v. Tangipahoa Parish Sch. Sys., 02-1913, p. 4 (La.App. 1 Cir. 8/20/03), 853 So.2d 741, 744 n. 2.